FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 18

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PROTECT THE PENINSULA'S FUTURE, <br><br> Appellant, <br><br> WASHINGTON ENVIRONMENTAL COUNCIL, <br><br> Respondent, <br><br> v. <br><br> GROWTH MANAGEMENT HEARINGS BOARD, and CLALLAM COUNTY, <br><br> Respondents. | No. 45459-9-II <br><br><br> PUBLISHED OPINION |

MAXA, J. — Protect the Peninsula's Future (PPF) appeals the Western Washington Growth Management Hearings Board's (Board) dismissal of its compliance action seeking to require Clallam County to adopt new critical areas regulations that comply with the Growth Management Act (GMA).[1] PPF argues that new regulations are required because the Board invalidated portions of Clallam's existing critical areas regulations in 2001, (a decision that we affirmed in part on appeal) and because the legislature-imposed moratorium on changes to critical areas regulations that took effect shortly after that invalidation now has ended.

---

[1] Chapter 36.70A RCW.

Clallam argues that the legislature implicitly validated Clallam's critical areas regulations by incorporating them into 2011 GMA amendments that established a new program, the Voluntary Stewardship Program (VSP). One of the VSP statutes, RCW 36.70A.735(1)(b), provides that counties that have elected to participate in the VSP but are unable to implement a VSP work plan instead can adopt the critical areas regulations of one of four counties, one of which is Clallam, to achieve compliance. Clallam claims that because some other counties can comply with the GMA by adopting Clallam's existing regulations, the legislature necessarily determined that those regulations comply with the GMA.

We hold under the plain language of RCW 36.70A.735(1)(b) that the legislature chose to distinguish alternative pathways to GMA compliance for counties that have elected to participate in the VSP and counties that have not, and that only the VSP counties can comply with the GMA by adopting Clallam's regulations. Therefore, we hold that RCW 36.70A.735(1)(b) does not reflect a legislative determination that Clallam's regulations unconditionally comply with the GMA's critical areas protection requirements. Because the Board based its dismissal of PPF's compliance action on a contrary reading of the statute, we reverse the Board's dismissal and remand to the Board for further proceedings consistent with this opinion.

FACTS

In December 1999, Clallam adopted critical areas regulations, as required by RCW 36.70A.060, part of the GMA. Part of Clallam's regulations, Clallam County Code (CCC) 27.12.035(7), exempted preexisting agricultural operations from the critical areas protection requirements. PPF petitioned the Board to invalidate the agricultural exemption and other parts

of the ordinance. The Board found that the agricultural exemption did not comply with the GMA requirements and invalidated that exemption.

In response, Clallam amended CCC 27.12.035(7) in 2001. The amended ordinance limited the agricultural exemption to preexisting agricultural uses on land classified as farm and agricultural land under the open space tax program, chapter 84.34 RCW, and required that exempt agricultural operations utilize best management practices. PPF again petitioned the Board for review. The Board held that the amended agricultural exemption was invalid, noting that it did not limit its application to designated agricultural resource areas. On appeal, we held that the Board correctly ruled that Clallam could not exempt all preexisting agricultural uses from critical areas regulations. *Clallam County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 130 Wn. App. 127, 133-37, 140, 121 P.3d 764 (2005). However, we also clarified that Clallam's agricultural exemption need not be limited to designated agricultural resource lands. *Id.* at 138-40. We remanded to the Board for further proceedings, including redetermination of whether the agricultural exemption complied with the GMA. *Id.* at 141.

Before the Board could determine on remand whether Clallam's agricultural exemption complied with the GMA, the legislature in 2007 enacted a moratorium on alteration of GMA critical areas regulations and initiated a policy study. Due to the moratorium, Clallam did not change its critical areas regulations. The moratorium lasted until 2011, when the legislature amended the GMA to add the VSP[2]. The VSP allows participating counties to comply with the GMA by implementing a watershed work plan that protects critical areas. RCW 36.70A.720. A

---

[2] Codified at RCW 36.70A.700-.760.

participating county that is unable to implement a VSP work plan may achieve GMA compliance by, among other things, adopting the critical areas regulations of one of four counties: Clallam, Clark, King, or Whatcom. RCW 36.70A.735(1)(b).

In order to participate in the VSP, counties had to elect to participate in the program by January 22, 2012, six months after the effective date of the 2011 amendments. RCW 36.70A.710(1)(b). Counties that did not elect to participate remained subject to the original GMA provisions requiring regulations protecting critical areas. RCW 36.70A.710(6). Clallam did not elect to participate in the VSP.

In August 2012, PPF reinitiated the delayed compliance review before the Board. Clallam moved to dismiss the compliance action, claiming that by enacting RCW 36.70A.735(1)(b) the legislature had validated Clallam's 2001 critical areas regulations and superseded the Board's invalidation order. Therefore, Clallam argued that its regulations were now fully compliant with the GMA. The Board agreed with Clallam's interpretation of RCW 36.70A.735(1)(b), stating that "[c]learly the legislature concluded the development regulations of those four counties were sufficiently protective of critical areas in areas used for agriculture." Clerk's Papers (CP) at 22. As a result, the Board granted the motion to dismiss, which served to rescind its prior order of invalidity. PPF appealed the dismissal to the superior court, which affirmed the Board. PPF now appeals.

## ANALYSIS

A. STANDARD OF REVIEW

The Administrative Procedure Act (APA), chapter 34.05 RCW, governs our review of the Board's order. *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 154 Wn.2d 224,

233, 110 P.3d 1132 (2005). We sit in the same position as the superior court and apply the APA standards directly to the record before the agency. *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). In other words, we review the Board's order, not the superior court's decision. *Id.* PPF, as the party asserting the invalidity of an administrative order, bears the burden of showing that the order is invalid. RCW 34.05.570(1)(a); *King County*, 142 Wn.2d at 552.

RCW 34.05.570(3) sets out nine grounds for invalidating an administrative order. *King County*, 142 Wn.2d at 553. PPF argues for reversal on one such ground: that the Board erroneously interpreted or applied the law.[3] *See* RCW 34.05.570(3)(d). We review the Board's legal conclusions de novo. *King County*, 142 Wn.2d at 553. The Board's interpretation of the GMA deserves substantial weight, but it is not binding on the courts. *Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008).

B.     THE GROWTH MANAGEMENT ACT AND THE VOLUNTARY STEWARDSHIP PROGRAM

Because this case involves the GMA's critical areas protection requirements, a description of the framework of those requirements is a necessary prologue to our analysis. The GMA classifies wetlands, aquifer recharge areas, natural fish and wildlife habitat, frequently flooded areas, and geologically hazardous areas as "critical areas." RCW 36.70A.030. The GMA requires counties to designate and protect these critical areas. RCW 36.70A.060.

---

[3] PPF also argues that the Board incorrectly assigned the burden of proof in this case and asks us to reverse on procedural grounds under RCW 34.05.570(3)(c). Because we reverse on other grounds, we do not address this issue.

Before the legislature amended the GMA to include the VSP, there was only one way to comply with the critical areas protection requirement: counties had to designate critical areas within their borders and adopt development regulations to protect them under RCW 36.70A.060(2). When drafting the regulations, counties were required to take into account the best available science and give special consideration to preservation or enhancement of anadromous fisheries. RCW 36.70A.172(1). Adoption of such protective development regulations under RCW 36.70A.060 remains a viable, but no longer the exclusive, pathway to compliance with the GMA's critical areas protection requirements.

In 2011 the legislature enacted H.B. 1886, which established the VSP. LAWS OF 2011, ch. 360. The VSP provides an alternative pathway to compliance with the GMA's critical areas protection requirements for certain agricultural areas. RCW 36.70A.710(1)(a). Counties choosing to take advantage of the VSP were required to officially opt in to the program and identify participating watersheds by January 22, 2012. RCW 36.70A.710(1)(b). The program applies to all unincorporated agricultural land in the participating watersheds. RCW 36.70A.710(5).

Counties that elected to participate in the VSP must designate a "watershed group" that broadly represents key watershed stakeholders. RCW 36.70A.715. The watershed group must develop a watershed work plan to protect critical areas while maintaining the viability of the agriculture in the watershed. RCW 36.70A.720(1). The plan must include goals and benchmarks for the protection and enhancement of critical areas. RCW 36.70A.720(1). The plan is submitted to the executive director of the state conservation commission for approval. RCW 36.70A.720(2)(a). The director refers the plan to a technical panel for review, which then

recommends approval or disapproval. RCW 36.70A.725. Once the director approves the plan, the county may receive state funding to implement it. RCW 36.70A.710(8). A county is not required to implement the program until the state provides adequate funding. RCW 36.70A.710(9).

As long as this voluntary stewardship is sufficient to achieve the county's planned goals and benchmarks, the county complies with the GMA's critical areas protection requirements. *See* RCW 36.70A.710(1)(a), 730. But if the director does not approve the watershed work plan, the plan fails to meet its goals and benchmarks, or the watershed group has not received adequate funding to implement the VSP program, the county must, within 18 months, adopt one of four alternative procedures to implement new critical areas regulations. RCW 36.70A.735(1)-(2). One of the county's options is to adopt development regulations previously adopted by one of four specified counties – Clallam, Clark, King, or Whatcom – or regulations approved by the Board or a court after July 1, 2011. RCW 36.70A.735(1)(b).

In short, currently there are two different pathways to compliance with the GMA's critical areas protection requirements: (1) compliance with the provisions of the VSP for counties that elected to participate in the VSP by January 22, 2012, and (2) adoption of protective development regulations under RCW 36.70A.060 for counties that did not elect to participate in that program.

C.     PLAIN LANGUAGE INTERPRETATION OF RCW 36.70A.735(1)(b)

PPF argues that the Board erroneously interpreted RCW 36.70A.735(1)(b) as a legislative determination that Clallam's previously invalidated critical areas regulations now comply with the GMA. We agree. The plain meaning of RCW 36.70A.735, interpreted in light of the VSP's

7

statutory scheme, provides that a county not electing to participate in the VSP – including Clallam itself – cannot comply with the GMA by adopting Clallam's critical areas regulations. We therefore hold that RCW 36.70A.735(1)(b) does not represent a determination by the legislature that Clallam's previously invalidated critical areas regulations unconditionally comply with the GMA's critical areas protection requirements.

    1.    Principles of Statutory Interpretation

Statutory interpretation is a matter of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 762. To determine legislative intent, we first look to the plain language of the statute. *Id.* at 762. We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear. *Id.* at 600. When the statute at issue or a related statute includes an applicable statement of purpose, the statute should be read in a manner consistent with that stated purpose. *See Nationscapital Mortg. Corp. v. Dep't of Fin. Inst.*, 133 Wn. App. 723, 736, 137 P.3d 78 (2006). And "[r]elated statutory provisions must be harmonized to effectuate a consistent statutory scheme that maintains the integrity of the respective statute." *Koenig v. City of Des Moines*, 158 Wn.2d 173, 184, 142 P.3d 162 (2006).

If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent without considering extrinsic sources. *Jametsky*, 179 Wn.2d at 762. We do not rewrite unambiguous statutory language under the guise of interpretation.

*Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). And we do not add language to an unambiguous statute even if we believe the legislature "intended something else but did not adequately express it." *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002).

2.    Applicability of RCW 36.70A.735(1)(b)

The initial question in this case is when a county can invoke RCW 36.70A.735(1)(b) and achieve compliance with the GMA by adopting Clallam's invalidated critical areas regulations. We hold that the plain language of RCW 36.70A.735 and related VSP provisions show that only counties participating in the VSP program that are unable to implement a watershed work plan can comply with the GMA by adopting Clallam's regulations.

The starting point in interpreting RCW 36.70A.735(1)(b) is recognizing that RCW 36.70A.735 – entitled in part, "When work plan is not approved, fails, or is unfunded" – is an integral part of the VSP. At each step in the development and implementation of a watershed work plan, the VSP states that the watershed will become subject to RCW 36.70A.735 if the work plan cannot move forward for certain specific reasons.

RCW 36.70A.735(2) provides that a "participating watershed"[4] is subject to this statute if (a) the director does not approve the watershed's work plan as provided in RCW 36.70A.725, (b) the work plan's goals and benchmarks for protection have not been met as provided in RCW 36.70A.720, (c) the commission determines that the county or state agencies have not received adequate funding to implement the program as provided in RCW 36.70A.740, or (d) the

---

[4] A "participating watershed" is a watershed that has been nominated by a participating county and approved by the state conservation commission. RCW 36.70A.703(5).

commission determines that the watershed has not received adequate funding to implement the program as provided in RCW 36.70A.740.

RCW 36.70A.735(1) provides that after one of the events listed in subsection (2), the county has 18 months to select one of four options to protect critical areas in areas used for agricultural activities. One of these options is set forth in RCW 36.70A.735(1)(b):

> (b) Adopt development regulations previously adopted under this chapter by another local government for the purpose of protecting critical areas in areas used for agricultural activities. Regulations adopted under this subsection (1)(b) must be from a region with similar agricultural activities, geography, and geology and must: (i) Be from *Clallam*, Clark, King, or Whatcom counties; or (ii) have been upheld by a growth management hearings board or court after July 1, 2011, where the board or court determined that the provisions adequately protected critical areas functions and values in areas used for agricultural activities.

(Emphasis added.)[5]

The plain language of RCW 36.70A.735(2) unambiguously states when a county can rely on RCW 36.70A.735(1)(b). Under this language, a county that did not elect to participate in the VSP cannot comply with the GMA under RCW 36.70A.735(1)(b) by adopting Clallam's critical areas regulations. Here, Clallam did not elect to participate in the VSP. It therefore has failed to satisfy the prerequisite statutory conditions necessary to achieve compliance under RCW 36.70A.735(1)(b).

---

[5] RCW 36.70A.735 (1)(b) provides that a county can achieve compliance with the GMA by adopting regulations from an agriculturally, geographically, and geologically similar county, as long as *either* (i) that county is Clallam, Clark, King, or Whatcom, *or* (ii) the Board or a court upheld that county's regulations after July 1, 2011. By separating these two possibilities with the word "or," the legislature indicated that participating counties may adopt Clallam, Clark, King, and Whatcom counties' regulations regardless of whether the Board or a court has approved those regulations.

3. Legislative Approval of Clallam Regulations

Clallam argues that because the legislature stated in RCW 36.70A.735(1)(b) that a county can comply with the GMA by adopting Clallam's regulations for participating watersheds, the legislature necessarily determined that Clallam's regulations comply with the GMA. We disagree, and hold that the plain language of RCW 36.70A.735, interpreted in light of the VSP statutory scheme, does not support the interpretation that the legislature "approved" Clallam's regulations *for counties not participating in the VSP*.

Interpretation of an unambiguous statute must focus on the plain statutory language, not what seems most reasonable or "makes sense" from a policy perspective. When the legislature has expressed its intent in the plain language of a statute, we cannot substitute our judgment for the legislature's judgment. *City of Bellevue v. Raum*, 171 Wn. App. 124, 155-56 n.28, 286 P.3d 695 (2012). Here, the legislature has expressed its clear intent to treat counties participating in the VSP differently from counties not participating in the VSP for purposes of GMA compliance.

First, RCW 36.70A.735 does not expressly state that *any* county can comply with the GMA by adopting Clallam's critical areas regulations. As noted above, the plain language of RCW 36.70A.735(2) unambiguously provides that a county can invoke RCW 36.70A.735(1)(b) only if it (1) has elected to participate in the VSP, and (2) is unable to implement a watershed work plan.

Second, the legislature expressly described the purpose of the VSP statutes and the legislature's intent in enacting them in RCW 36.70A.700, and we must consider this stated intent when examining the plain meaning of RCW 36.70A.735. The legislature clearly expressed its intent to treat counties participating in the VSP differently than counties not choosing to

11

participate in that program. RCW 36.70A.700(2). Under RCW 36.70A.700(2)(g), one fundamental goal of the VSP is to "[r]ely upon voluntary stewardship practices as the primary method of protecting critical areas and not require the cessation of agricultural activities." But RCW 36.70A.700(2)(c) states another intent regarding counties not participating in the VSP: to "[r]ely upon *RCW 36.70A.060* for the protection of critical areas for those counties that do not choose to participate in this program." (Emphasis added.)

These statements of purpose show that the legislature intended to create two alternate paths for complying with the GMA: (1) voluntary stewardship practices governed by the VSP and (2) "traditional" critical areas regulations adopted under RCW 36.70A.060. This intent is reflected in RCW 36.70A.710(1)(a), which provides: "As an *alternative* to protecting critical areas in areas used for agriculture activities through *development regulations adopted under RCW 36.70A.060*, the legislative authority of a county may elect to protect such critical areas through the [VSP]." (Emphasis added.)

In other words, the VSP now allows counties participating in the VSP to comply with the GMA without adopting regulations under RCW 36.70A.060. Compliance can be achieved under the provisions of the VSP, including (if applicable) adopting Clallam's critical areas regulations as allowed in RCW 36.70A.735(1)(b). But counties not participating in the VSP cannot achieve compliance through the VSP provisions, and instead must adopt "traditional" regulations under RCW 36.70A.060 that comply with the GMA.

Because the legislature's stated intent was to treat counties participating in the VSP differently than counties not participating, we do not interpret RCW 36.70A.735(1)(b) as an unconditional validation of Clallam's critical areas regulations. Instead, we hold that the VSP's

plain language provides that *counties participating in the VSP* can comply with the GMA by adopting Clallam's regulations (for watersheds that cannot implement a watershed work plan), but counties not participating in the VSP cannot. Because Clallam did not elect to participate in the VSP, it has not satisfied the conditions necessary to claim legislative validation.

4.    Absurd Results

Clallam argues that the plain meaning of RCW 36.70A.735(1)(b) supports its interpretation because the contrary interpretation would lead to an absurd result. Clallam claims that it would be absurd to allow a county to comply with the GMA by adopting Clallam's regulations as allowed under RCW 36.70A.735 while Clallam itself could not rely on those same regulations to comply with the GMA. The Board found this argument persuasive:

> [T]he board observes the position advanced by PPF could potentially produce an absurd result. For example, a county with similar agricultural activities, geography and geology to that of Clallam County and which elected to opt in to the VSP could conceivably adopt Clallam County's existing development regulations. Those development regulations would be deemed to adequately protect critical areas in areas used for agricultural activities and thus be GMA compliant. On the other hand, the identical development regulations adopted by Clallam County would not be sufficient to protect such critical areas and would fail to comply with the GMA.

CP at 22. We disagree.

The general rule regarding absurd results is a rule of statutory construction, which we can employ only if the statutory language is ambiguous. *See State v. Ervin*, 169 Wn.2d 815, 823, 239 P.3d 354 (2010). As discussed above, RCW 36.70A.735 unambiguously establishes conditions that must be met before a county may achieve GMA compliance with Clallam's current critical areas regulations. The legislature clearly expressed its intent that counties participating in the VSP be able to comply with the GMA by adopting Clallam's regulations if

13

they cannot implement the watershed work plan, but that counties electing not to participate in the VSP be able to comply only by adopting critical areas regulations under RCW 36.70A.060. The legislature did not implicitly declare that Clallam's current critical areas regulations automatically and unconditionally satisfy the GMA's critical areas protection requirements under RCW 36.70A.060.

The statutory scheme makes it clear that counties that opt in to the VSP can lawfully adopt Clallam's critical areas regulations, but counties electing not to participate in the VSP – including Clallam itself – cannot. Clallam may claim that this result reflects an absurd policy. But whether a statutory directive implements good or bad policy is immaterial to our analysis because the legislature is charged with making those policy decisions. As long as the legislature uses unambiguous language to express its intent to achieve a certain result, we cannot disregard that language.[6]

5. Conclusion

We hold that the Board erred by interpreting RCW 36.70A.735(1)(b) as a legislative validation of Clallam's previously invalidated critical areas regulations for counties not participating in the VSP. We reverse the Board and remand for a determination of whether

---

[6] In response to Clallam's absurdity argument, PPF argues that the legislature contemplated that counties could adopt Clallam's critical areas regulations under RCW 36.70A.735(1)(b) only after Clallam reviewed and revised those regulations to comply with the GMA. Because we reverse the Board's order on different grounds, we do not address this argument.

Clallam's critical areas regulations comply with the GMA under RCW 36.70A.060 and related statutes.[7]

## D. ATTORNEY FEES

PPF requested an award of reasonable attorney fees in its reply brief. But during oral argument, PPF withdrew its attorney fee request. Accordingly, we do not consider whether PPF is entitled to an award of attorney fees.

We reverse the Board's dismissal of PPF's compliance action and remand to the Board for proceedings consistent with this opinion.

MAXA, J.

We concur:

JOHANSON, C.J.

SUTTON, J.

---

[7] PPF argues that the Board abused its discretion by refusing to take official notice of the resolution and web pages, and asks us to take judicial notice of these materials. Because we reverse the Board's order on interpretive grounds, we do not address these issues.