## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFF GRAHAM and JOHN GRAHAM, | No. 47651-7-II |
| Appellants, | |
| v. | |
| HEATHER RANKOS and GEORGE RANKOS, and NORTH OAKES MANOR CONDOMINIUM ASSOCIATION, | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — Jeff Graham and his father, John Graham, appeal the dismissal of their declaratory action against fellow condominium association members George and Heather Rankos and the North Oakes Manor Condominium Association (the Association), arguing they were wrongly removed as Association board members. The Grahams allege they were denied notice of the vote to remove them, and the vote was not by a supermajority. We disagree and affirm.

### FACTS

The Association is made up of eight condominium owners, each condominium has one voting right associated with it. Jeff[1] was the Association president and treasurer and John was the Association vice president and secretary. Jeff owned three of the eight condominiums and John lived in one of them.

---

[1] We use first names to avoid confusion. We intend no disrespect.

The Association members met in October 2014, and voted to remove the Grahams from the Association board.[2] The vote was five to three with the three votes against removal coming from Jeff's three voting rights. A two-thirds vote would require six out of eight votes. Since the vote was insufficient, the Association believed the vote failed under RCW 64.34.308(8).

The Association later learned foreclosure proceedings had begun on Unit 1913-C, one of Jeff's units. Based on the Association's covenants, conditions, and restrictions, Jeff no longer had a voting right for that unit. Another removal vote occurred at a November 2014 meeting. The vote was five to two. Because five out of seven votes exceeded the required two-thirds majority, the Association removed Jeff and John as board members. The Association members met again in December and elected a new board. The Grahams did not attend.

On January 9, 2015, ownership of Unit 1913-C, transferred from Jeff's limited liability company to U.S. Bank in a foreclosure sale. An annual owners' meeting was scheduled for January 24. The Association "property manager" sent the meeting agenda to the condominium owners.[3] Clerk's Papers (CP) at 183. The agenda for the January 24 owners' meeting did not list board member removal as an agenda item, but notified the owners that the Association would "[r]eview and ratify [the December] meeting minutes" and address any "[n]ew items from any owner." CP at 184.

---

[2] RCW 64.34.308(8) requires "a two-thirds vote of the voting power in the association present . . . may remove any member of the board of directors with or without cause."

[3] Under RCW 64.34.332, the secretary, or another specified officer, of a condominium association must provide notice to each unit owner of an upcoming owners' meeting and "shall state . . . the items on the agenda to be voted on by the members, including . . . any proposal to remove a director or officer."

The Grahams attended the January 24 owners' meeting and contested their earlier removal and the previous election of a new Association board. The Association agreed to a new vote. The Association members again voted five to two to remove the Grahams.[4]

The Grahams filed a complaint,[5] seeking declaratory relief, declaring that their removal was invalid. The Grahams further asked the trial court to declare Jeff the president of the Association board. The Grahams moved for summary judgment, and the Association requested dismissal of the Grahams' declaratory action. The trial court ruled that "the 'Graham' board was validly removed," and dismissed the Grahams' complaint. CP at 170. The Grahams moved for reconsideration, providing supplemental materials and arguing their removal was invalid based on lack of notice. The court denied their motion, noting it considered the Grahams' supplemental materials. The Grahams appeal.

ANALYSIS

I.    STANDARD OF REVIEW

While we recognize a court's dismissal of a request for declaratory relief is reviewed for abuse of discretion,[6] the Association's pleadings and the trial court's order are unclear on what basis the court granted the Association's dismissal request. We adopt the higher standard of review for summary judgment dismissals, and review the dismissal de novo. *Woods v. H.O. Sports Co. Inc.*, 183 Wn. App. 145, 148, 333 P.3d 455 (2014). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

---

[4] U.S. Bank owned one of the units and did not send a representative to the meeting.

[5] The Grahams had previously filed an injunctive relief action in Pierce County Superior Court under cause no. 14-2-06599-5, which is not the subject of this appeal.

[6] *Grandmaster Shen–Yen Lu v. King County*, 110 Wn. App. 92, 99, 38 P.3d 1040 (2002).

CR 56(c). We review the facts and reasonable inferences in the light most favorable to the nonmoving party. *Seiber v. Poulsbo Marine Ctr., Inc.*, 136 Wn. App. 731, 736, 150 P.3d 633 (2007).

II.    NOTICE

The Grahams first contend the Association failed to provide proper notice of the January 24, 2015 meeting thereby invalidating the vote at the meeting to remove Jeff and John from the board. They contend that under RCW 64.34.332, notice must be provided when a meeting involves a proposal to remove a director or an officer.

Initially we address the Association's argument that the Grahams improperly raise this issue for the first time on appeal. Generally issues may not be raised for the first time on appeal. RAP 2.5(a). However, while the Grahams' notice issue was not raised in their initial pleadings, it was raised during their request for reconsideration, and the trial court expressly stated it considered the issue prior to denying reconsideration. Thus, the Grahams sufficiently preserved this issue for our review.

Washington's Condominium Act, chapter 64.34 RCW, requires condominium associations to provide notice of upcoming meetings not less than 10 days nor more than 60 days in advance. RCW 64.34.332. The Act further requires the notice to include an agenda that provides notice of "any proposal to remove a director or officer." RCW 64.34.332.

Here, the owners received a meeting agenda, stating that at the January 24 meeting, the Association would "[r]eview and ratify [the December] meeting minutes" and address any "[n]ew items from any owner." CP at 184. At the time of the notice, the Grahams had already been voted out as board members. They, however, attended the January 24 meeting and protested their

4

removal. This protestation resulted in a new vote. The Association members again voted for their removal.

It would be disingenuous for the Grahams to complain of lack of notice of a removal vote in January when the Grahams instigated the vote after the meeting started. The Association did not anticipate or plan for a new vote. Nevertheless, the agenda sufficiently notified owners that a new vote could be possible by stating that the December 2014 meeting minutes would be ratified (where a new board was elected), and that the Association would address new issues any owner raised. Moreover, Jeff's votes were cast in opposition to his removal, precluding any perceived prejudice. *See Hasit LLC v. City of Edgewood*, 179 Wn. App. 917, 954, 320 P.3d 163 (2014) (notice should afford individuals a meaningful opportunity to present their objections).

Next, the Grahams object to U.S. Bank's lack of notice, arguing if U.S. Bank received notice it may have voted by proxy in Jeff's favor. This argument is not only purely speculative, but improper. "'The doctrine of standing generally prohibits a party from asserting another person's legal right.'" *In re Estate of Fitzgerald*, 172 Wn. App. 437, 452, 294 P.3d 720 (2012) (quoting *Timberlane Homeowners Ass'n, Inc. v. Brame*, 79 Wn. App. 303, 307, 901 P.2d 1074 (1995)). The Grahams cannot raise an assignment of error for lack of notice to U.S. Bank. That right is reserved to U.S. Bank. Thus, the Grahams lack standing to contest U.S. Bank's legal right to notice.

III.    TWO-THIRDS MAJORITY VOTE

The Grahams next contend their removal was not supported by a two-thirds majority of owners, as required under RCW 64.34.308(8), because only five voted for removal out of eight votes.

5

Statutory interpretation is a question of law we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Jametsky*, 179 Wn.2d at 762. To determine legislative intent, we first look to the statute's plain language. *Jametsky*, 179 Wn.2d at 762. "We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes". *Protect the Peninsula's Future v. Growth Mgmt. Hr'gs Bd.*, 185 Wn. App. 959, 969, 344 P.3d 705 (2015). We give words their usual and ordinary meaning. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

RCW 64.34.308(8) states that "the unit owners, by a two-thirds vote of the voting power in the association present and entitled to vote at any meeting of the unit owners *at which a quorum is present*, may remove any member of the board of directors with or without cause." (Emphasis added). A quorum exists when "twenty-five percent of the votes of the association are allocated are present in person or by proxy at the beginning of the meeting." RCW 64.34.336(1).

Here, there are eight units, or eight voting rights. Seven were represented at the January 24 meeting. Relying on RCW 64.34.308(8)'s and RCW 64.34.336(1)'s plain language and reading the statutes in context and in relation to each other, the seven owners present at the January 24 meeting were a quorum, and over two-thirds of the quorum voted to remove the Grahams as board members. This vote constituted RCW 64.34.308(8)'s two-thirds requirement.

Lastly, the Rankos included an assignment of error in their response brief regarding whether the Grahams' attorney violated the rules of professional conduct. Under RAP 5.1(d), a respondent seeking review of a lower court decision must file a timely notice of appeal. Because the Rankos did not do so, we do not consider their issue.

6

Based on the above, the trial court did not err in denying the Grahams' request for declaratory relief. The court properly dismissed the action.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, P.J.

Sutton, J.