[No. 2459-3. Division Three. September 28, 1978.]

*In the Matter of the Estate of*
LUTHER L. HARRISON.

*Hamblen, Gilbert & Brooke, P.S.,* and *Wm. Fremming Nielsen,* for appellant.

*Tanksley, Richard, Padden, Derr & Carroll* and *Raymond R. Tanksley, Jr.,* for respondent.

ROE, J.—In 1955, when he made his will, Luther L. Harrison, the decedent, had been married three times. Of

his first marriage he had a child, Constance Jean Harrison. There were no children of his second marriage. Of his third marriage to Louise S. Harrison, one child was born, Susan. His will declared his legal marriage to his wife Louise, and that at that time he had two children, namely, Constance and Susan. In paragraph 4 he declared that should his wife *survive* him, then he made "no provision for my *children now* born unto me or children hereafter born unto me, knowing that my wife will adequately provide for *them* out of my estate." (Italics ours.) As of that date his children were Constance and Susan. This would suggest a concern for all children and that they be treated alike. Later, another child was born to the decedent and Louise, a son, John B. Harrison. In paragraph 6 the testator gave all of his property of whatever kind to his wife Louise, but in the case of her *death* before distribution to her, then the entire interest should be given to Susan and in effect, John (any children hereafter born unto him as tenants in common in equal shares). Constance, the first child, would share equally with all the other children only in the proceeds of the life insurance policy. In a prior will executed in 1951, he had stated, "I specifically make no provision for my daughter, Constance Jean Harrison." In that will he left all his property to his wife Louise. Then his only child was Constance.

The cause of the litigation is the fact that his then wife Louise did not predecease Luther, but rather she divorced and survived him. Luther Harrison never executed a new will. The will makes no provision in the event of such a divorce. Admittedly, under the statute, RCW 11.12.050,[1]

---

[1]RCW 11.12.050 reads as follows:

"If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse."

the divorce effectively removes Louise from taking the estate. To state the question another way, is the *divorce* by Louise as effective as her *death* so that Susan and John, the issue of the third marriage, would take all of the estate to the exclusion of Constance, or does the fact that the ex–wife Louise did not die, and that the statute revokes the will as to her because of the divorce, leave Luther Harrison dying intestate so that his entire estate should be distributed in equal shares to his children Constance, Susan, and John? The trial court found the latter. Susan and John appeal, seeking the entire estate to be given one–half to each. It would be easy and possibly simplistic to hold that the will gave the property to Susan and John if Louise died. She didn't; therefore, that paragraph is inoperative and intestacy results. However, a discussion is appropriate.

■ Appellants rely on *Peiffer v. Old Nat'l Bank & Union Trust Co.,* 166 Wash. 1, 6 P.2d 386 (1931). In that case the decedent also had children by two marriages. Katherine was the older child, and in his will the testator said that he expressly mentioned Katherine and made no devise or bequest to her in the will. He then gave it all to his wife Mabel, provided she would survive him and further provided that in the event that she did, he made no provision for his younger child, Albert. He further provided that in the event Mabel should not survive, then he gave all· of his property to Albert. In that case as in this, Mabel survived but was divorced and the divorce, after the making of the will, operated to revoke the will as to the divorced spouse. Hence, the dispute was between the two children. It was urged by Katherine, of the first marriage, that since Mabel did not predecease her husband, which was a contingency under which Albert would take all of the estate, therefore the decedent was intestate and the property should be distributed in equal shares to the two children. In deciding the case, the court adverted to the general law that the intention of the testator must be determined at the time of the execution of the will. Construing all the provisions together, and when possible to sustain the right to

dispose of one's property by will, there was an affirmative and positive intention expressed to give no devise or bequest to the older daughter Katherine, not only specifically, but in the language bequeathing to his wife Mabel and also in the event of her death to his son Albert. All of the provisions of the will indicated that it would benefit only his then wife or his son, and that Katherine was excluded.

Paragraph 4 of that will provided in the event the estate all went to his wife Mabel, no provision was made for Albert for the reason that "*his* interest will be fully cared for by my beloved wife." (Italics ours.) The court found that the divorce did not annul the provision except as to the wife and did not annul the bequest to the son and the disinheritance of the daughter.

In this case, Constance Harrison, the respondent, relies on *In re Estate of McLaughlin,* 11 Wn. App. 320, 523 P.2d 437 (1974). In that case the decedent left all the property to his wife Ethel and provided that if she predeceased him, then it went to his stepson, Ethel's child by a previous marriage. Again the wife, at the time of the making of the will, did not predecease the testator; rather, she divorced him. Upon his death the decedent left no children, but rather a brother, sister, and a niece. The dispute, of course, was between them and the stepson who claimed the entire estate. The court, in reversing the trial court, held that since the stepson was not an heir of the decedent, that the conditional alternative bequest to the stepson failed because the condition (death of the wife) did not occur. Under the previously quoted statute the will was revoked as to the then wife, Ethel, and eliminated the stepson. The court stated that by the terms of the will he takes only if the ex–wife predeceased the decedent. Since the ex–wife survived the decedent, the bequest fails, leaving the decedent's estate to pass via the laws of intestate succession. *In re Estate of McLaughlin, supra* at 321.

In distinguishing that case from *Peiffer v. Old Nat'l Bank & Union Trust Co., supra, McLaughlin* stated that

the rationale of the Supreme Court in the earlier case was that the survivorship language in the will would be construed to mean that the son would take if Mabel Peiffer did not survive as the decedent's beloved wife for a 3–month period. Since Mabel Peiffer was no longer the decedent's beloved wife, rather his divorced ex–wife, the court held that the condition occurred, leaving a valid testamentary disposition to the son. The court felt that the overriding consideration in *Peiffer* was that in construing all the provisions together the will conveyed a clear and unmistakable testamentary intent to, first, disinherit the older child, daughter of a prior marriage, and second, to provide for the testator's own minor son, and that the will should be liberally construed to effectuate a testamentary intent made manifest in the will by the decedent.

In *McLaughlin*, the court was unable to perceive any such clear and unmistakable testamentary intent, that is to take care of the stepson, and was unable to determine that the testator's intent at the time of execution of the will was other than as expressed in the plain meaning of the language used. Hence, since his then wife, Ethel, did not predecease the decedent, which was the condition of the bequest to the stepson, the stepson took nothing, and the decedent died intestate.

We feel that the principles enunciated in the latter case control the disposition of this case. There was no suggestion in the will of Luther Harrison that he was specifically excluding the older child, Constance, from sharing in his estate. At the time of the execution he had but two children, Constance and Susan, and paragraph 4 of the will clearly referred to the fact that his wife would receive all of his estate and that he made no provision for the *children* (plural), which would be Constance and Susan, because they were the only ones living at that time. He stated he did so knowing that his "wife will adequately provide for *them*" (italics ours), again the plural pronoun, which could only refer to both Constance and Susan as well as other afterborn children.

He also referred in paragraph 6 to the fact that Constance would share equally with all other children in the proceeds of life insurance policies. Thus, rather than finding a clear and unmistakable intent to disinherit Constance, the child of the first marriage, which was the rationale of the *Peiffer* case, the will indicates a concern for all of his children and even referred to the fact that Constance might share in certain insurance proceeds. The record reflects she was unable to do so because, according to the federal law or the terms under which the insurance was paid, she would not take.

At oral argument, appellants seek to attach significance to paragraph 5 of the will,[2] which nominated a guardian and alternate for Susan, excluding Constance. This is not controlling. It would be normal to nominate a guardian for a child living with his then wife, but unlikely and unnecessary for a child living with her mother, an estranged ex–wife. No nomination of a guardian was made for John. Appellants do not suggest disparate treatment between Susan and John.

While this interpretation results in the decedent's intestacy as to the children, yet it is in harmony with his intent as expressed in various ways in the will to see that all of his children were adequately taken care of, even to the extent that all of the children, including Constance, would share equally in the proceeds of life insurance policies.

Finding no intent to disinherit Constance and finding that the operative clause of the will, namely, the pre–death of his wife Louise, never occurred, then all of his children

---

[2] "FIFTH: I hereby appoint my wife the personal and legal guardian of my child, SUSAN MICHEL HARRISON, now living, or any children hereafter born unto me, but in case of the death of my wife before me or before distribution has been had to her in due course of probate, then I direct that my father, GEORGE D. HARRISON, be appointed the personal and legal guardian of the aforementioned child and of her respective entire interest, both legal and equitable, in this my estate. In the event my father and my wife both predecease me, I then direct that my sister, MAUDIE POE, be appointed the personal and legal guardian of the aforementioned child and of her respective entire interest, both legal and equitable, in this my estate."

take equally. In fact, all three children are issue of divorced wives; hence, it would be reasonable to assume that they all should be treated alike.

Counsel for the respondent was appointed to represent the interest of Constance, the older child. He was given an attorney's fee by the trial court for his efforts on her behalf at the trial level. He seeks additional fees for his efforts on appeal. We grant this request.

Judgment is affirmed and the cause remanded for determination and award of attorney's fees on appeal.

GREEN and McINTURFF, JJ., concur.