# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Estate of: | No. 46778-0-II |
| DANA MOWER, | PUBLISHED OPINION |
| Deceased. | |

BJORGEN, A.C.J. — Linda Turner, personal representative of the estate of Dana Mower, appeals the trial court's grant of summary judgment declaring Eric and Theresa Schuler (the Schulers) residuary beneficiaries under Dana's[1] will. The Schulers are the brother and sister-in-law of Dana's former spouse, Christine Mower. Turner argues that (1) the bequest to the Schulers should be revoked under RCW 11.12.051 as a provision "in favor of" a testator's former spouse, (2) the bequest to the Schulers fails because its conditions precedent have not been met, and (3) the assets covered by the bequest to the Schulers should pass via intestacy. Turner also argues that the trial court erred in awarding attorney fees to the Schulers, and both parties request attorney fees on appeal.

---

[1] To avoid confusion, we refer to Dana Mower and Christine Mower by their first names. No disrespect is intended.

We hold that (1) a provision "in favor of" a testator's former spouse under RCW 11.12.051 is one that benefits the former spouse without directly conferring a property interest or power, and the bequest to the Schulers does not qualify as such a provision, (2) operation of RCW 11.12.051 to revoke the primary residuary bequest in Dana's will satisfies the condition precedent to the bequest to the Schulers, and (3) the will, not the law of intestacy, governs distribution of Dana's residuary assets. We therefore affirm the trial court's order granting summary judgment to the Schulers. We also affirm the trial court's award of attorney fees and we award attorney fees on appeal to the Schulers, to be paid from the estate.

## FACTS

Dana executed his will in 2005, at which time he was married to Christine. The will included residuary provisions conditioned on whether Christine survived him by at least 30 days. If Christine survived him, part of the residue of his estate would go to her directly and the rest would go into a trust set up for her benefit. If Christine did not survive him, half of the residue would be split equally among his siblings, and the other half would go to the Schulers.

In 2012, Dana and Christine decided to divorce. They filed a stipulated decree of dissolution on November 13 of that year, finalizing the divorce. Dana died unexpectedly from an apparent heart attack 16 days later. Dana did not revise his will or execute a new will before his death.

Dana's will named Christine as the personal representative of his estate, with Turner named as the preferred alternate. Because Christine was his former spouse, and powers conferred on her by Dana's will would be revoked pursuant to RCW 11.12.051, Turner offered

2

the will for probate and was appointed as the personal representative of Dana's estate in January 2013.

In February 2013, Turner petitioned the trial court for a declaratory judgment that the Schulers were not beneficiaries under the will. Turner argued that under RCW 11.12.051 testamentary gifts to relatives of a testator's former spouse should be revoked, and she presented extrinsic evidence that Dana had intended to disinherit the Schulers after his divorce from Christine, but had not had an opportunity to change his will before he died. In response, the Schulers claimed that Eric Schuler and Dana had been friends before Dana married Christine.

The Schulers moved for summary judgment adjudicating them beneficiaries both under the will and of certain nonprobate assets. Turner then cross-moved for summary judgment, arguing that the bequest to the Schulers should fail because it was conditioned on Christine's death and Christine was still alive. The trial court granted the Schulers' motion, but withheld a final ruling on the nonprobate assets. The trial court denied Turner's cross motion. The Schulers later moved for a final order after determining that they were not named beneficiaries of any nonprobate assets. The trial court granted their motion and awarded them reasonable attorney fees, to be paid by Dana's estate.

Turner appeals.

ANALYSIS

Turner first argues that the residuary bequest to the Schulers in Dana's will should be revoked under RCW 11.12.051. Turner argues in the alternative that the bequest fails because its conditions precedent have not been satisfied. In either case, Turner asserts that the bequest should not be given effect and the assets covered by the bequest should pass by intestacy.

We review de novo a trial court's order granting summary judgment, performing the same inquiry as the trial court. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). We view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* If there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, we will affirm the trial court's order of summary judgment. *Id.* We may do so on any grounds supported by the record. *Pac. Marine Ins. Co. v. State ex rel. Dep't of Revenue*, 181 Wn. App. 730, 737, 329 P.3d 101 (2014).

## I. REVOCATION OF TESTAMENTARY GIFTS TO A FORMER SPOUSE'S FAMILY MEMBERS

According to Turner, we should interpret RCW 11.12.051 as providing for automatic revocation of testamentary gifts to a former spouse's family members upon dissolution of the marriage between the testator and the former spouse. We disagree with this interpretation of RCW 11.12.051.

1. Principles of Statutory Interpretation

In interpreting statutes enacted by our legislature, we determine and give effect to the legislature's intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). To do so, we first look to the plain language of the statute. *Id.* "When the legislature has expressed its intent in the plain language of a statute, we cannot substitute our judgment for the legislature's judgment." *Protect the Peninsula's Future v. Growth Mgmt. Hr'gs Bd.*, 185 Wn. App. 959, 972, 344 P.3d 705 (2015). To assess the meaning of the plain language, we consider the text of the provision in question, the context of the statute in which the provision is found, and related statutes. *Id.* Where a statutory term is not expressly defined in the statute, we look to its usual

and ordinary meaning. *Id.* If the plain meaning of a statute is unambiguous, we must apply that

plain meaning as an expression of legislative intent without considering extrinsic sources.

*Jametsky*, 179 Wn.2d at 762. We will not add language to an unambiguous statute under the

guise of interpretation. *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002).

However, we must construe ambiguous statutory provisions. Statutory language is

ambiguous when it is "'susceptible to more than one reasonable interpretation.'" *Seven Sales*

*LLC v. Otterbein*, 189 Wn. App. 204, 208, 356 P.3d 248 (2015) (quoting *Stephenson v. Pleger*,

150 Wn. App. 658, 662, 208 P.3d 583 (2009)). To construe such ambiguous language, we look

to the legislative history, relevant case law, and established principles of statutory construction to

discern legislative intent. *Anthis v. Copland*, 173 Wn.2d 752, 756, 270 P.3d 574 (2012).

Moreover, "policy considerations may provide a valuable rule of statutory construction in

interpreting an ambiguous statute." *Allan v. Dep't of Labor & Indus.*, 66 Wn. App. 415, 418,

832 P.2d 489 (1992).

2.     Interpretation of RCW 11.12.051

Turner argues that the trial court should have revoked Dana's testamentary gift to the

Schulers because the gift was "in favor of" Christine within the meaning of RCW 11.12.051. Br.

of Appellant at 12. We disagree and hold that testamentary gifts to family members of a former

spouse are not necessarily gifts in favor of the former spouse.

RCW 11.12.051(1) provides:

If, after making a will, the testator's marriage or domestic partnership is dissolved,
invalidated, or terminated, all provisions in the will *in favor of or granting any
interest or power to the testator's former spouse* or former domestic partner are
revoked, unless the will expressly provides otherwise. *Provisions affected by this
section must be interpreted, and property affected passes, as if the former spouse*

5

*or former dome77stic partner failed to survive the testator*, having died at the time
of entry of the decree of dissolution or declaration of invalidity.

(Emphasis added.)  Because the statute is in derogation of the common law, we construe its

provisions strictly.  *See Peiffer v. Old Nat'l Bank & Union Tr. Co.*, 166 Wash. 1, 6, 6 P.2d 386

(1931).

By its plain language, the statute requires courts to apply the legal fiction that a former

spouse predeceased the testator when interpreting will provisions that specifically give an

interest in property or a power to the former spouse or that operate "in favor of" the former

spouse.  Here, the will provision bequeathing half of Dana's residual estate to the Schulers

neither conveys an interest in property to Christine nor confers any power on her.  However,

Turner argues that the bequest was included due to the Schulers' familial relationship with

Christine and therefore constitutes a provision "in favor of" Christine.  Thus, the primary

interpretive question before this court is what "in favor of" means in RCW 11.12.051.

A.  Ambiguity

To begin our interpretive analysis, we must determine whether the phrase "in favor of" is

ambiguous as used in RCW 11.12.051.  We conclude that it is.

The usual and ordinary meaning of the phrase "in favor of" is "to the special advantage or

benefit of."  WEBSTER'S THIRD NEW INT'L DICTIONARY at 830 (1969).  This meaning seems to

require that a provision in favor of a party confer some direct benefit on that party.  However,

among the usual and ordinary meanings of the verb "favor" are "to do a kindness for or oblige,"

WEBSTER'S, *supra* at 830, and "to show partiality or unfair bias towards," BLACK'S LAW

DICTIONARY, at 738 (4th ed. 1968); *see also* WEBSTER'S, *supra* at 830 (noting a secondary

meaning of "in favor of" as "in accord or sympathy with").  These meanings show that it is at

least reasonable to believe that a testator could execute a will provision in favor of a party by including that provision at the party's behest or to satisfy that party's desire, even if the provision itself confers no direct benefit on the favored party. Therefore, the term "in favor of" as used in RCW 11.12.051 is susceptible to more than one reasonable interpretation and is ambiguous.

B. Resolution of Ambiguity

Because the phrase "in favor of" is ambiguous, we must resolve the ambiguity. To do so, we may look to principles of statutory construction, legislative history, relevant case law, and public policy to discern the legislature's intent. We hold that the phrase "in favor of" as used in RCW 11.12.051 includes all will provisions that benefit a former spouse without directly conveying any power or property interest, as long as those provisions would be effectively revoked by treating the former spouse as predeceasing the testator.

i. Legislative History

Turner argues that because the Uniform Probate Code (UPC) recommends revoking testamentary gifts to family members of a testator's former spouse, our legislature must have similarly intended that RCW 11.12.051 would revoke gifts to such former relatives. The Schulers argue that the provisions of RCW 11.12.051 and the UPC are dissimilar, indicating that the legislature intentionally took a path different from that advocated by the UPC. We agree with the Schulers.

Turner asserts, without citing to any authority, that RCW 11.12.051 was "modeled after the first [UPC] § 2-508." Br. of Appellant at 12. That model statute provided:

> If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment *revokes any disposition or appointment of property* made by the will *to the former spouse, any provision conferring a general or special power of appointment on the former spouse*, and *any nomination of the former spouse as*

7

*executor, trustee, conservator, or guardian*, unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent, and other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent. . . . For purposes of this section, divorce or annulment means any divorce or annulment which would exclude the spouse as a surviving spouse within the meaning of Section 2-802(b). A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section. No change of circumstances other than as described in this section revokes a will.

Prior UPC (1969) § 2-508, 8 pt. 2 U.L.A. 535 (2013) (emphasis added).[2] The official comment

to the section explained that

[t]he section deals with what is sometimes called revocation by operation of law. It provides for revocation by a divorce or annulment only. No other change in circumstances operate to revoke the will. . . .

8 U.L.A. at 535 cmt. Neither the text of the section nor the comment discuss family members of

a former spouse, and both expressly state that the section contemplates "[n]o other change [of]

circumstances." Therefore, if anything, these UPC provisions indicate that our legislature

intended to restrict the application of RCW 11.12.051 to former spouses only.

Turner cites to the revised UPC section 2-804 as well, but that model statute notably

contrasts with RCW 11.12.051. The revised section 2-804 expressly revokes testamentary gifts

to relatives of the testator's former spouse:

[P]rovisions of a governing instrument are given effect as if the former spouse *and relatives of the former spouse* disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the former spouse and relatives of the former spouse died immediately before the divorce or annulment.

---

[2] The revised version of section 2-508 provides only that "[e]xcept as provided in Sections 2-803 and 2-804, a change of circumstances does not revoke a will or any part of it." 8 pt. 1 U.L.A. 266. Section 2-803 governs the effect of homicide on will provisions, and therefore is unrelated to the question before this court. *Id*. at 323-25. Section 2-804 concerns, inter alia, revocation of wills by dissolution of marriage. *Id*. at 330-32.

Revised UPC § 2-804(d) (amended 2010), 8 pt. 1 U.L.A. 331. The official comment to that section further clarifies the UPC position:

> Given that, during divorce process or in the aftermath of the divorce, the former spouse's relatives are likely to side with the former spouse, breaking down or weakening any former ties that may previously have developed between the transferor and the former spouse's relatives, seldom would the transferor have favored such a result. This section, therefore, also revokes these gifts.

Revised UPC § 2-804, at 333 cmt. 2.

Unlike revised UPC section 2-804, RCW 11.12.051 includes no express provision revoking gifts to relatives of a former spouse, and the statute generally does not resemble the language or structure of the UPC section. Although the revised version of the UPC was available to our legislature when it enacted RCW 11.12.051 in 1994, *see* 8 pt. 1 U.L.A. 333 cmt. 1, the legislature chose not to enact the language of the UPC or similar language. Therefore, comparison with the UPC weighs toward interpreting RCW 11.12.051 as applying strictly to testamentary gifts to former spouses, not gifts to their relatives.

### ii. Relevant Case Law

Two older Washington cases, *In re Estate of McLaughlin*, 11 Wn. App. 320, 523 P.2d 437 (1974), and *In re Estate of Harrison*, 21 Wn. App. 382, 585 P.2d 187 (1978), addressed testamentary gifts to relatives of a testator's former spouse. The Schulers argue that because those cases predated enactment of the language of RCW 11.12.051, the legislature's subsequent choice not to expressly provide for revocation of gifts to such former relatives indicates that such gifts are not necessarily revoked under RCW 11.12.051. We agree.

In both *McLaughlin* and *Harrison*, the courts construed will provisions as precluding gifts to relatives of a testator's former spouse. However, the courts in both cases applied former RCW 11.12.050 (1978), *repealed by* LAWS OF 1994, ch. 221, § 72, which provided:

> If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse.

This language differs from that of RCW 11.12.051, revoking will provisions as "to the former spouse" and including no provision that courts treat a former spouse as predeceasing the testator.

This distinction is critical because in both *McLaughlin* and *Harrison* the key issue was whether the testator's former spouse predeceased him, thereby triggering will provisions conditioned on the former spouse's death. *McLaughlin*, 11 Wn. App. at 321; *Harrison*, 21 Wn. App. at 387-88. This court presumes that in subsequently enacting RCW 11.12.051, the legislature knew the case law construing the earlier statute. *See Bob Pearson Constr., Inc. v. First Cmty. Bank of Wash.*, 111 Wn. App. 174, 179, 43 P.3d 1261 (2002). With this presumed knowledge, the legislature abrogated the case law by enacting an express requirement that courts treat a former spouse as predeceasing the testator. Yet it added no language concerning relatives of the former spouse, even though both *McLaughlin* and *Harrison* involved such relatives. Therefore, the legislature's action in the face of the case law indicates that it did not intend to necessarily revoke testamentary gifts to such former relatives.

10

### iii. Principles of Statutory Construction

Turner directs this court's attention to a Maryland case *Friedman v. Hannan*, 412 Md. 328, 987 A.2d 60 (2010), which turned in part on the principle that a court must give effect to all language included in a statute and should not treat any as surplusage. We apply that same principle here.

Washington courts, like the Maryland court, observe "the rule against surplusage, which requires this court to avoid interpretations of a statute that would render superfluous a provision of the statute." *Veit, ex rel. Nelson v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 113, 249 P.3d 607 (2011). The legislature chose to include in RCW 11.12.051 language revoking will provisions "in favor of" a former spouse, as well as provisions "granting any interest or power to the testator's former spouse." In order to avoid subsuming the former provision within the latter, and thereby rendering the phrase "in favor of" superfluous and redundant, we must interpret the phrase "in favor of" to mean something distinct from the conveyance of power or property interests. Because the legislature chose to include the language, it must refer to some benefit other than a direct grant of power or property.

As noted above, we construe RCW 11.12.051 strictly because it is in derogation of the common law of wills. *Peiffer*, 166 Wash. at 6. Applying the rule against surplusage, we hold that the legislature indicated its intent that RCW 11.12.051 generally revoke provisions benefitting the former spouse by providing for revocation of will provisions that are "in favor of" the testator's former spouse, while distinguishing provisions that grant power or property to that former spouse. In some cases, gifts to the former spouse's family members may confer some

11

benefit on the former spouse. Whether a particular will provision benefits the testator's former spouse would be a factual question for the trial court to resolve.[3]

However, RCW 11.12.051 expressly provides a particular manner of revocation: construction of the will as if the testator's former spouse predeceased him. If that language is to be given effect, a will provision in favor of a former spouse should only fall within the scope of RCW 11.12.051 if it would be effectively revoked by the death of the former spouse. A will provision that confers only an attenuated, indirect benefit on the testator's former spouse—for example, a bequest to a person from whom the former spouse might later inherit the bequeathed asset—would not be revoked by pretending that the former spouse predeceased the testator. In contrast, a will provision conferring some personal benefit on the former spouse—for example, a provision setting up a trust to care for the former spouse's pet as long as the former spouse lived—would not survive if that former spouse were considered deceased. Therefore, construing RCW 11.12.051 strictly, a will provision "in favor of" a former spouse must be one that would be effectively revoked by treating that former spouse as predeceasing the testator.

### iv. Policy Considerations

Turner argues that public policy considerations should lead us to construe RCW 11.12.051 broadly and hold that it revokes testamentary gifts to relatives of a former spouse.

---

[3] The Maryland court in *Friedman* reached a similar conclusion after applying the rule against surplusage, although the language of the Maryland revocation-on-dissolution statute was notably different. 412 Md. at 337-38, 348. The court interpreted the phrase "relating to" broadly and held that the statute "is not limited in its effect to provisions for the direct benefit of the spouse." *Id*. at 348. The court further held that it is a factual question whether a will provision is one "relating to" a former spouse. *Id*.

However, the policy views of this court should not supersede the indications in the legislative

history that our legislature intended not to enact a law like that suggested by revised UPC 2-804.

To support her policy argument, Turner directs this court's attention to the *Restatement*

*(Third) of Property*, which addresses language identical to that used in RCW 11.12.051:

> The dissolution of the testator's marriage, including divorce or annulment, is a change in circumstance that presumptively revokes any provision in the testator's will in favor of his or her former spouse. The term "provision in the testator's will in favor of his or her former spouse" not only encompasses a dispositive provision in favor of the former spouse, but also a provision nominating the former spouse to act in any fiduciary or representative capacity (such as personal representative, executor, trustee, conservator, agent, or guardian), a provision conferring a general or nongeneral power of appointment on the former spouse, and other provision of similar import.
> . . . .
> Most revocation statutes, including the Original UPC, limit the scope of the revocation to provisions in favor of the *former spouse*. Under Revised UPC § 2-804, dissolution of the testator's marriage also revokes any provision in the testator's will in favor of a relative of the former spouse who, after the dissolution, is no longer related to the testator by blood, adoption, or affinity.
>
> The revoked provisions pass as if the former spouse—and, under the Revised UPC, relatives of the former spouse—predeceased the testator.

RESTATEMENT (THIRD) OF PROPERTY § 4.1, cmt. o (1999) (alteration in original). The Reporter's

Note on this comment further explains that

> where the controlling revocation-upon-divorce statute provides that the devise to the former spouse alone is revoked, the case law generally holds that *the testator's estate passes under the alternative devise, even if the alternative devise favors relatives of the former spouse.* [Citation omitted.] However, even if the controlling revocation statute provides only that the devise to the former spouse is revoked, *the court should feel free to effectuate the purpose of the statute by extending its terms to revoke the devise to the former spouse's children.* The rationale for extending the statute is that the deceased spouse, the testator, would not want his or her estate to be divided between the testator's children and the former spouse's children.

RESTATEMENT (THIRD) OF PROPERTY, § 4.1, Rep. Note 10 (1999) (emphasis added).

According to Turner, a similar rationale applies to testamentary gifts to any relative of the former spouse. As noted above, the revised UPC explains this idea:

> Given that, during divorce process or in the aftermath of the divorce, the former spouse's relatives are likely to side with the former spouse, breaking down or weakening any former ties that may previously have developed between the transferor and the former spouse's relatives, seldom would the transferor have favored such a result.

UPC § 2-804, 8 pt. 1 U.L.A. at 333 cmt. 2. Some courts in other jurisdictions have quoted this language approvingly. *E.g.*, *Estate of Hermon*, 39 Cal. App. 4th 1525, 1532, 46 Cal. Rptr. 2d 577 (1995). The Maryland court in *Friedman* was also in accord:

> [D]ivorce is often acrimonious, with the acrimony spilling over to the former spouse's family. Also, it is common in writing wills during a marriage that two spouses divide their assets between their respective family members because they have agreed that is fair. Even without acrimony, this viewpoint is likely to change upon divorce.

412 Md. at 345.

The *Restatement* and UPC suggest presumptive revocation of gifts to a former spouse's relatives because dissolved unions rend the relationships that usually underlie such gifts. This may or may not be sound public policy. However, we will not construe RCW 11.12.051 to achieve such a policy goal without some indication that the legislature had that purpose in mind. Indeed, the fact that the legislature has not moved to amend or repeal RCW 11.12.051 in light of the more recent policy suggestions embodied in the *Restatement* and UPC indicates that the legislature did not have this policy in mind. Therefore, despite the apparent trend seen in the *Restatement* and UPC toward revoking testamentary gifts to relatives of a testator's former spouse, we must refrain from broadly interpreting RCW 11.12.051 on policy grounds.

v. Conclusion

As concluded above, principles of statutory construction counsel that the phrase "in favor of" as used in RCW 11.12.051 refers to any testamentary gifts that benefit the former spouse in some manner other than direct conveyance of a power or property interest and that would be effectively revoked by treating the former spouse as predeceasing the testator.

Turner argues that because Dana's property would go to Christine's family, she would ultimately benefit from the bequest. Turner also appears to argue that because Dana had no relationship with the Schulers that would warrant their inclusion in his will, he must have included them to benefit Christine. However, even if Dana's bequest to the Schulers indirectly benefits Christine, it would not be effectively revoked by applying the fiction of law that she predeceased Dana. Therefore, the alternative will provision bequeathing half of the residue of Dana's estate to the Schulers was not a provision in favor of Christine within the meaning of RCW 11.12.051.

## II. SATISFACTION OF THE CONDITION PRECEDENT

Turner claims that Christine's disinheritance under RCW 11.12.051 should not satisfy the condition precedent for the alternative will provision bequeathing half of the residue of Dana's estate to the Schulers. She presents two bases for this claim: (1) the residuary provisions in Dana's will were conditioned on his continued marriage to Christine and (2) Christine's literal death was required to satisfy the condition that she predeceased Dana by at least 30 days. We disagree.

1.    Condition Precedent:  Continued Marriage to Christine

In interpreting the provisions of a will, our job is to determine the testator's intent.  *In re Estate of Burks*, 124 Wn. App. 327, 331, 100 P.3d 328 (2004).  If possible, this intent is to be gleaned from the four corners of the will.  *Id.*  To do so, we follow the objective manifestation theory used in contract interpretation, imputing an intention corresponding to the reasonable meaning of the words used.  *In re Estate of Bernard*, 182 Wn. App. 692, 697, 332 P.3d 480, *review denied*, 339 P.3d 634 (2014).  Terms expressly defined should be interpreted in accordance with the express definition.  *See Black v. Nat'l Merit Ins. Co.*, 154 Wn. App. 674, 679-80, 226 P.3d 175 (2010).

In a section entitled "Identification of Family," Dana's will specifies that "[t]he term 'my spouse' as used in this Will shall mean and refer to Christine Leiren Mower."  Clerk's Papers (CP) at 2.  Numerous provisions throughout the will refer to either "my spouse" or "my spouse, Christine Leiren Mower."  CP at 2-8.  Sections 5.2 and 5.3 of the will, governing the disposition of the residue of the estate, are structured as alternative sets of provisions conditioned on whether "my spouse survives me by a period of thirty (30) days."  CP at 7-8.  The bequest to the Schulers, part of the second alternative set of provisions, is operative only "[i]n the event my spouse fails to survive me by a period of thirty (30) days."  CP at 8.

The will defines "my spouse" as Christine personally.  The definition includes no caveat altering its meaning in the event that Dana and Christine are no longer married.  Moreover, the provisions of section 5.2 include no reference to Dana's marriage to Christine and no language altering the definition of "my spouse."  Therefore, we interpret the alternative residuary bequests as conditioned on whether Christine survived Dana by a period of 30 days.  Under the terms of

the will, the bequest to the Schulers is not conditioned on whether Christine in fact remained Dana's spouse at the time of his death.

2.      Condition Precedent:  Literal Death of Christine

Turner also argues that the gift to the Schulers was conditioned on Christine's literal death, and that operation of RCW 11.12.051 is insufficient to satisfy the condition.  We disagree.

As discussed above, Dana's will clearly conditions the residuary bequest to the Schulers on Christine's failure to survive Dana by at least 30 days.  However, RCW 11.12.051(1) expressly provides that

> [p]rovisions affected by this section must be interpreted, and property affected passes, as if the former spouse or former domestic partner failed to survive the testator, having died at the time of entry of the decree of dissolution or declaration of invalidity.

Therefore, to the extent the residuary provisions of Dana's will are affected by RCW 11.12.051, we construe them as though Christine predeceased Dana.

As noted above, the residuary provisions of the will are set up as alternatives based on Christine's survival.  Under the first alternative, if Christine survives Dana by at least 30 days she receives a portion of the residue directly.  Under RCW 11.12.051, those provisions must be construed as though Christine predeceased Dana, triggering the second set of alternative provisions containing the bequest to the Schulers.

Turner contends that RCW 11.12.051 is inapplicable because *McLaughlin* and *Harrison* established as a matter of common law that the literal death of the testator's former spouse is required to give effect to a substitutional gift conditioned on that former spouse's nonsurvival. In both *McLaughlin* and *Harrison*, our court did hold that will provisions conditioned on the death of the testator's former spouse were not satisfied by dissolution of the testator's marriage

to that former spouse. *See McLaughlin*, 11 Wn. App. at 321; *Harrison*, 21 Wn. App. at 387-88. However, RCW 11.12.051 had not yet been enacted when those cases were decided, and both cases construed the earlier statute. The legislature later specifically added the statutory language requiring courts to treat a former spouse as predeceasing the testator. We presume that the legislature was aware of the earlier cases and acted accordingly. *See Bob Pearson Constr.*, 111 Wn. App. at 179. Therefore, to the extent that RCW 11.12.051 is inconsistent with the earlier holdings, the statute abrogates those holdings.

### III. OPERATION OF INTESTACY LAWS

Turner argues that because the residuary provision benefitting the Schulers should either be revoked or rendered inoperative by failure to satisfy a condition precedent, half of the residue of Dana's estate should pass via intestate succession to Dana's mother. Because we hold that the provision is not revoked and the condition precedent is satisfied, Turner's position cannot be sustained.

### IV. ATTORNEY FEES

Turner argues that the trial court erred by awarding attorney fees and also requests attorney fees on appeal. The Schulers request attorney fees on appeal as well. We hold that the trial court did not err in awarding attorney fees to the Schulers, and we award the Schulers reasonable attorney fees on appeal to be paid for by the estate.

1. Attorney Fees Awarded by the Trial Court

Turner argues that the trial court erred by awarding the Schulers attorney fees because they did not substantially prevail. We disagree.

18

Under the attorney fees award provisions of the Trusts and Estate Dispute Resolution Act (TEDRA), chapter 11.96 RCW, the trial court has discretion to award fees and other costs to any party in an estate dispute proceeding governed by Title 11 RCW. RCW 11.96A.150. The court may award any amount it "determines to be equitable." RCW 11.96A.150(1). "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150. We review a trial court's decision to award attorney fees under TEDRA for an abuse of discretion. *In re Estate of Black*, 153 Wn.2d 152, 173, 102 P.3d 796 (2009).

The trial court expressly declared that "the Schulers are the prevailing party on the Estate's and Ms. Turner's respective petitions to adjudicate beneficiaries," CP at 417, and granted both of the Schulers' motions for summary judgment while denying Turner's cross motion. Yet Turner argues on appeal, without citation to the record, that the Schulers "prevailed on only one issue, the probate assets, while the Estate prevailed on the second issue, the non-probate assets." Br. of Appellant at 26. Turner may be referring to the fact that the Schulers admitted in their second motion that after discovery they were not named beneficiaries on any nonprobate assets. However, the trial court granted the Schulers' motion, so they technically prevailed.

Regardless, RCW 11.96A.150 does not require that a party substantially prevail to be entitled to an attorney fees award. Instead, it expressly gives the trial court discretion to grant such an award to "any party." RCW 11.96A.150(1). Where a will beneficiary prevails on a claim raised by the personal representative of an estate, an attorney fees award may be

19

appropriate. *See McDonald v. Moore*, 57 Wn. App. 778, 783, 790 P.2d 213 (1990). Here, Turner brought this action and forced the Schulers to defend their position as beneficiaries of the will. Because that position had merit, the trial court did not err by awarding attorney fees.

The trial court ordered that the award for the Schulers' attorney fees be paid by the estate. "The touchstone of an award of attorney fees from the estate is whether the litigation resulted in a substantial benefit to the estate." *In re Estate of Black*, 116 Wn. App. 476, 490, 66 P.3d 670 (2003). However, a trial court does not necessarily abuse its discretion by awarding fees from an estate even without a substantial benefit. *Id.* Here, there was arguably a substantial benefit to the estate, as the action adjudicated the proper beneficiaries. Moreover, the trial court did not want to penalize Turner personally for raising potentially meritorious policy arguments and advocating for a change in Washington law. These considerations warranted ordering the award to be paid by the estate.

2.      Attorney Fees on Appeal

Both Turner and the Schulers request attorney fees and costs on appeal. We award the Schulers attorney fees and costs to be paid by the estate.

We may grant an award of reasonable attorney fees on appeal to a party that requests it in its opening brief, as long as applicable law provides for such an award. RAP 18.1. RCW 11.96A.150 applies not only to trial courts, but also to "any court on an appeal." Therefore, like the trial court, this court has discretion to award reasonable attorney fees in estate disputes. We may order such an award paid by "any party to the proceedings" or "the assets of the estate or trust involved in the proceedings." RCW 11.96A.150(a)-(b). In exercising its discretion, we may consider whatever factors we deem appropriate. RCW 11.96A.150(1).

20

We award the Schulers attorney fees on appeal, to be paid from the estate. We encourage parties to raise and defend against legitimate issues of statutory interpretation, so that such issues may be resolved for the public benefit. As the trial court noted, this case involved a legitimate issue of statutory interpretation. Therefore, we award attorney fees to the prevailing party, to be paid from the estate. Even if this case were not of substantial benefit to the estate, the litigation involved an important estate dispute and it is most equitable to have the estate bear the burden of the appeal.

CONCLUSION

We affirm the trial court's summary judgment order in favor of the Schulers, affirm the award of reasonable attorney fees to the Schulers at trial, and award the Schulers their reasonable attorney fees on appeal, both fee awards to be paid from the estate.

_____, C.J.
BJORGEN, .J.

I concur:

_____
SUTTON, J.

No. 46778-0-II

MELNICK (dissenting) — The majority and I rely on the same facts, the same principles of statutory construction, and the same statute. However, because we differ on the interpretation of the relevant statute and its applicability to the facts of this case, I respectfully dissent.

At issue in this case is the interpretation of RCW 11.12.051(1). In relevant part it reads:

> If, after making a will, the testator's marriage or domestic partnership is dissolved, invalidated, or terminated, *all provisions in the will in favor of or granting any interest or power to the testator's former spouse or former domestic partner are revoked*, unless the will expressly provides otherwise. *Provisions affected by this section* must be interpreted, and property affected passes, as if the former spouse or former domestic partner failed to survive the testator, having died at the time of entry of the decree of dissolution or declaration of invalidity.

RCW 11.12.051(1) (emphasis added).

I agree with the majority that the provision at issue in Dana's will is not "in favor of" Christine,[4] and we do not use the legal fiction that she "died at the time of entry of the decree of dissolution."[5] For this reason, I believe the sentence that begins, "Provisions affected by this section . . ." is inapplicable.[6] If none of the provisions of the will is "in favor of" the testator's prior spouse, then there cannot be any provisions of the will affected by this portion of the statute. For this reason, I would hold that Dana died intestate. I would also hold that the award of attorney fees to the Schulers is in error.



_____
Melnick, J.

---

[4] Majority at 15,

[5] *See* RCW 11.12.051(1).

[6] *See* RCW 11.12.051 (1).