# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| In the Matter of the Estate of:<br><br>EDWIN ROBERT GOULTER, JR.,<br><br><div align="right">Deceased.</div> | No.  59317-3-II<br><br>UNPUBLISHED OPINION |

LEE, P.J. — Thomas Goulter appeals the superior court's order granting summary judgment in favor of Christopher Freshley, the personal representative of the Estate of Edwin Robert Goulter, Jr. (Bud).[1]  Thomas argues that the superior court erred by concluding that Bud's will was not revoked.  Thomas also argues that the superior court erred by ordering him to pay a portion of Freshley's attorney fees in defending against the TEDRA petition.  Both parties request attorney fees on appeal.

We hold that the superior court did not err, either in concluding that Bud's will was not revoked or in ordering Thomas to pay attorney fees.  Accordingly, we affirm.  Also, we deny Thomas' request for attorney fees on appeal and grant Freshley's request for attorney fees on appeal from Thomas.

<div align="center">FACTS</div>

Bud died on May 14, 2022.  On May 31, Bud's son, Thomas, petitioned for appointment as administrator of Bud's estate.  Thomas claimed that he was unable to find a will, and therefore,

---

[1] Edwin Robert Goulter was well-known as "Bud" and is referred to as such throughout the record; therefore, we refer to him as "Bud."  Also, because many of the people involved in this case have the last name of "Goulter," we use first names for the sake of clarity.  We intend no disrespect.

Bud's estate should be admitted to probate as an intestate estate. The primary asset in the estate was Bud's real property in Oysterville, which was largely undeveloped land. Bud's intestate heirs were Thomas and Bud's other son, Gerald. The superior court appointed Thomas as administrator of Bud's estate without bond and issued letters of administration.

After Thomas was appointed as administrator of Bud's estate, Bud's will was located in his home. The will designated Freshley as personal representative of Bud's estate. The will provided that the Oysterville property would be conveyed to a charitable organization to create a conservation property and to prevent any development on the property. Bud bequeathed Thomas $500 and bequeathed Gerald $1,000 along with the residual of the estate including any Indian trust property. The will also provided for some additional small gifts and distribution of personal property.

Bud signed the 4-page will. Bud also initialed each page of the will. In addition, Bud signed an "Affidavit to Accompany Indian Will."[2] Frederic Cann, the attorney who prepared the will, and Freshley witnessed the will.

When the will was found, a line had been drawn through Bud's signature on the Affidavit to Accompany Indian Will and the word "void" was written underneath. Clerk's Papers (CP) at 17.

---

[2] An Affidavit to Accompany Indian Will is used to create a "self-proving" will under the federal regulations for Indian Estates administered by the Bureau of Indian Affairs. 25 C.F.R. §§ 15.7-15.9. Under the federal regulations, an Affidavit to Accompany Indian Will is not required for a will to be valid. *See* 25 C.F.R. § 15.4.

I any other manner that I myself of my own free will desire and wish to dispose of it.

EDWIN ROBERT GOULTER, JR.
Cowlitz Enrollment Number 1426

Signed and sworn to before me this November 24, 2021, by Edwin Robert Goulter Jr.

CP at 17.

On August 26, 2022, Gerald petitioned the superior court for an order probating Bud's will. On the same day, Thomas filed a TEDRA[3] petition seeking to have the will declared revoked. The superior court consolidated the TEDRA petition with the probate of Bud's estate.

In January 2023, Gerald filed a motion to remove Thomas as the administrator/personal representative of Bud's estate. Freshley joined in Gerald's motion. The superior court entered a stipulated order appointing Freshley as the successor personal representative of Bud's estate.

A.   CROSS MOTIONS FOR SUMMARY JUDGMENT

Thomas and Freshley, as personal representative of Bud's estate, filed cross motions for summary judgment. The parties agreed on the following underlying facts.

Freshley had a relationship with Bud since 1993. In 2021, Freshley agreed to help Bud prepare his will. Over the course of several weeks, Freshley worked with Bud to understand Bud's wishes for his will. Bud's "main issues for his Will were to give the minimum amount possible to his children so they couldn't contest the Will (his words) and to preserve the Goulter Oysterville property as some kind of conservation property. . . . He did not want to see his property developed

---

[3] Trust and Estates Dispute Resolution Act, chapter 11.96A RCW.

3

into a housing tract." CP at 244. After the terms of the will were established, Freshley arranged a meeting with Cann to prepare the will.

Cann first met with Bud for estate planning in 2019; however, Bud did not execute a will at that time. On November 24, 2021, Cann met with Bud and Freshley to execute Bud's will. Freshley and Bud arrived at the office with a list of matters to be addressed in the will. Then, Cann met with Bud and prepared the will. When Bud was satisfied with the will, Freshley returned to the office and witnessed the execution of the will.

After the will was executed, Bud would sometimes stop by the office to visit with Cann's assistant. On one occasion, Bud mentioned changing the will but did not specify what the changes would be and did not make an appointment to change the will. Several weeks before Bud died, Bud told Freshley that he wanted to change his will to leave his real property to the Cowlitz tribe. Bud refused Freshley's offer to make another appointment with Cann and mentioned having the Cowlitz tribe execute a new will for him.

After Bud died, the will could not be located and there were rumors that Bud had destroyed the will. Cann agreed to represent Thomas as administrator of Bud's intestate probate. Later, while Gerald and other family members were cleaning out Bud's house, they found the will between the cushions of the couch where Bud had been sleeping. The will that was found contained the mark striking through the signature on the Affidavit to Accompany an Indian Will and writing "void" underneath. CP at 17. There was no evidence documenting the circumstances under which the marks were made on the will.

Thomas argued that the act of writing "void" on the will was so evident of cancelling the will, that the will must be considered revoked. Thomas also argued that Bud's statements to others indicated a desire to change his will and was proof of Bud's intent to revoke the will.

Freshley argued that the markings on the will were insufficient to show that the will was revoked because there was no evidence that the marks were intended to revoke the entire will. Specifically, Freshley contended that the marks could, at best, be considered a revocation of the Affidavit to Accompany Indian Will, which did not affect the dispositive provisions of the will. Freshley also argued that all the evidence demonstrated that Bud's intent would have been, at most, to change his will, not to revoke the entire will and die intestate.

On January 10, 2024, the superior court granted Freshley's motion for summary judgment and denied Thomas' motion for summary judgment. Based on its rulings on the cross motions for summary judgment, the superior court dismissed Thomas' TEDRA petition and admitted Bud's will to probate with Freshley serving as the personal representative with non-intervention powers, as stated in Bud's will.

B.    ATTORNEY FEES

On January 19, Freshley, as personal representative of Bud's estate, filed a petition for attorney fees against Thomas personally. Freshley argued that Thomas should be liable for attorney fees because the TEDRA petition was frivolous and directly in contradiction to Bud's wishes for the distribution of his property.

Thomas opposed Freshley's petition for attorney fees to the extent the attorney fees were being sought against him personally and not paid by Bud's estate as an administrative expense. Further, Thomas requested that he be awarded his attorney fees to the extent that his attorney fees could not be awarded as an administrative expense of Bud's estate. Thomas argued that there were three reasons supporting his request: Thomas was raising a novel issue, Thomas acted on advice of counsel, and Thomas pursued the TEDRA petition in good faith. Cann filed an affidavit

supporting Thomas' assertions that the TEDRA petition raised a novel issue and was pursued in good faith on the advice of counsel.

The superior court determined that it was inappropriate for Bud's estate to bear the cost of defending Thomas' TEDRA petition, granted Freshley's petition for attorney fees against Thomas, and denied Thomas' request for attorney fees. The trial court entered a written order on attorney fees which contained the following findings:

1. Thomas Goulter's TEDRA action did not confer a benefit on the Estate of Edwin Robert Goulter, Jr. that would justify an award of Thomas Goulter's attorney fees and costs, and the Court finds it appropriate to exercise its discretion to deny Thomas Goulter's Petition for TEDRA Attorney Fees.

2. The Personal Representative's defense of the TEDRA action conferred a substantial benefit on the Estate of Edwin Robert Goulter, Jr., and the Court finds it appropriate to exercise its discretion to award the Estate its reasonable attorney fees under RCW 11.96A.150(1) as further described below.

. . . .

6. The Court finds that the attorney fees incurred by the Estate in the amount of $42,494.62 were reasonable and necessary to the outcome achieved in this case, which was the summary judgment dismissal of Thomas Goulter's TEDRA action.

7. The Court finds it is appropriate that Thomas Goulter reimburse the Estate for $21,247.31, 50% of the Estate's reasonable attorney fees incurred herein.

Suppl. CP at 2-3.

Thomas appeals.

ANALYSIS

A.   SUMMARY JUDGMENT

Thomas argues that the superior court erred by granting Freshley's motion for summary judgment because Bud's act of crossing out his signature and writing "void" on the Affidavit to Accompany Indian Will was sufficient to meet the requirements for revoking a will. We disagree.

6

We review a superior court's ruling on summary judgment de novo. *Crisostomo Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "We review all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party." *W.M. v. State*, 19 Wn. App. 2d 608, 621, 498 P.3d 48 (2021), *review denied*, 1 Wn.3d 1012 (2022).

Under RCW 11.12.040, a will may be revoked by "being burnt, torn, canceled, obliterated, destroyed, or a physical act, with the intent and for the purpose of revoking the same, by the testator or by another person in the presence and by the direction of the testator." RCW 11.12.040(1)(b). A petitioner must prove by clear, cogent, and convincing evidence that a testator revoked their will. *In re Estate of Drown*, 60 Wn.2d 110, 113, 372 P.2d 196 (1962).

Here, it is undisputed that Bud's signature was crossed out and "void" was written on the Affidavit Accompanying an Indian Will. Thomas argues that this act alone is sufficient to show that the will was "canceled" and therefore revoked under the plain language of RCW 11.12.040. However, there is no statutory definition of "canceled."

We review questions of statutory interpretation de novo. *Nelson v. P.S.C., Inc.*, 2 Wn.3d 227, 233, 535 P.3d 418 (2023). Our objective in statutory interpretation is to ascertain and carry out the legislature's intent. *Royal Oaks Country Club v. Dep't of Revenue*, 2 Wn.3d 562, 568, 541 P.3d 336 (2024). "If the meaning of the statute is plain on its face, we give effect to that plain meaning as an expression of legislative intent." *Id*. Plain language is discerned from "the ordinary meaning of the language in the context of related statutory provisions, the entire statute, and related statutes." *Id*. We may use dictionary definitions to discern the plain meaning of terms undefined

by statute. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395, 325 P.3d 904 (2014).

> The dictionary defines "cancel" as:
>
> to mark or strike out for omission or deletion typically with lines crossed latticewise over the passage in question or by a line through the symbols involved. . . to remove from significance or effectiveness: as **a :** to destroy the force, effectiveness, or validity of.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 325 (2002).

Here, we agree that Bud's actions were a cancellation, but it was not of the entire will. Bud clearly drew a line through his signature and wrote "void" to remove his signature "from significance or effectiveness." However, this action only "canceled" his signature on the Affidavit to Accompany Indian Will. The plain language of RCW 11.12.040(1) allows for revocation of "[a] will, or any part thereof." Because Bud's actions canceled only his signature on the Affidavit to Accompany Indian Will, which is superfluous to the validity of the will itself, Bud's action did not amount to a cancellation of the entire will. Therefore, the remainder of the will remained intact, and the superior court did not err in granting Freshley's motion for summary judgment.[4]

Thomas argues that Bud's cancellation of the Affidavit to Accompany Indian Will should be imputed as an intent to cancel the entire will because Bud's actions prior to his death indicated an intent to revoke his will. We disagree.

---

[4] We note that Freshley relies extensively on the doctrine of dependent relative revocation. The doctrine of dependent relative revocation examines whether the revocation of a will was dependent on the execution of a subsequent will, whether the subsequent will is invalid, and whether the decedent would have intended distribution under the original will rather than intestate distribution. Here, the doctrine of dependent relative revocation is inapplicable because the revocation of Bud's will was not dependent on the execution of a subsequent will he believed to be valid. The issue is only whether Bud's striking out his signature and writing "void" on the Affidavit to Accompany Indian Will was an effective revocation of the entire will.

The undisputed facts show, at best, that Bud was considering changing or modifying his will to designate a specific beneficiary for his property. Despite the opportunity to do so, there is no evidence that Bud took any specific action to effectuate any change to his will prior to his death, which undermines the argument that he intended to revoke his entire will. Further, the specific intent to modify a portion of his will does not support an inference that Bud intended to revoke his entire will. Accordingly, the undisputed facts do not support the conclusion that Bud intended to revoke his entire will.

We affirm the superior court's order on the cross motions for summary judgment.

B.      ATTORNEY FEES AT TRIAL COURT

Thomas also argues that the superior court abused its discretion by awarding Freshley attorney fees under TEDRA. We disagree.

We review a superior court's decision to award attorney fees under TEDRA for an abuse of discretion. *In re Est. of Mower*, 193 Wn. App. 706, 727, 374 P.3d 180, *review denied*, 186 Wn.2d 1031 (2016). RCW 11.96A.150(1) provides that the superior court may award attorney fees in the amount and manner that the superior court "determines to be equitable." When determining whether to award attorney fees, the superior court "may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1).

Here, the superior court was not required to consider any particular factor or reason for bringing the TEDRA petition when awarding attorney fees. Because the superior court considered the benefit to the Estate and determined that requiring Thomas to pay a portion of the attorney fees was equitable, the superior court did not abuse its discretion in its attorney fees order. Accordingly, we affirm the superior court's award of attorney fees.

C.     ATTORNEY FEES ON APPEAL

Thomas requests his attorney fees on appeal under RAP 18.1 and RCW 11.96A.150. Freshley also requests attorney fees on appeal under RAP 18.1 and RCW 11.96A.150.

RAP 18.1 allows for the award attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." And RCW 11.96A.150(1) provides for attorney fees on appeal "in such amount and in such manner as the court determines to be equitable."

Here, Thomas has not prevailed in his challenge to the superior court's decision on summary judgment. Therefore, it would not be equitable to award Thomas his attorney fees to be paid by Freshley or by Bud's estate.

Freshley, as the personal representative, has no personal stake in the litigation and receives no benefit from administering Bud's estate. Further, because the primary asset of Bud's estate is real property, which is to be left for conservation purposes, there are not significant funds available for the estate to pay for the cost of continued litigation. Therefore, it is equitable to award Freshley, as personal representative of Bud's estate, his attorney fees on appeal. Accordingly, we grant Freshley's request for attorney fees on appeal from Thomas.

CONCLUSION

We affirm the superior court's order concluding that Bud's will was not revoked and granting Freshley's summary judgment motion and the superior court's order on attorney fees. We also deny Thomas' request for attorney fees on appeal and grant Freshley's request for attorney fees on appeal from Thomas.

No. 59317-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Che, J.

11