[No. 27275. *En Banc.* June 22, 1939.]

GEORGE H. RUMMENS *et al., Appellants,* v. GUARANTY TRUST COMPANY *et al., Respondents.*[1]

[1]Reported in 92 P. (2d) 228.

338

*Allen, Froude & Hilen,* for appellants.

*Bonsted & Nichoson, F. C. Palmer, Jr.,* and *Poe, Falknor, Emory & Howe,* for respondents.

STEINERT, J.—Plaintiffs brought suit, in the nature of a creditors' bill in equity, to set aside an alleged gift and transfer of property by a debtor, now deceased, to a third party whose estate is, by reason of his death, being administered by his legal representative. A demurrer to the complaint was sustained, and, plaintiffs having elected to stand on their pleading, the court entered an order dismissing the action. Plaintiffs have appealed.

This action grows out of a complex situation resulting from the financial relations formerly existing between Sarah E. Smith and Reese B. Brown, and from certain events transpiring after the death of Mrs. Smith, and from still later events occurring after the death of Brown.

Inasmuch as the record herein is made up exclusively and wholly by the pleadings, we must assume the facts to be as alleged in the complaint, taken as admitted by the demurrer. Our statement of the case is, therefore, based upon the allegations of the complaint, which are, in substance, as follows:

During the period from 1927 to about April, 1929, Sarah E. Smith, who was possessed of a fortune said to amount to several millions of dollars, employed one Denton G. Burdick, an attorney of Portland, Oregon, to manage her financial affairs and to conduct certain litigation for her. As a result of differences of opinion subsequently arising between Mrs. Smith and Burdick, and at the instance and with the connivance and assistance of Reese B. Brown, Mrs. Smith, in 1929, brought an action in the circuit court of Portland, Oregon, against Burdick, seeking therein to obtain a money judgment. Burdick filed a cross-complaint for a large amount alleged to be owing him for legal services rendered. During the pendency of the action, Mrs. Smith died, but that fact did not become

known to Burdick until long after the litigation had terminated in a judgment. Brown, however, was at all times cognizant of Mrs. Smith's death, but kept the matter a secret between himself and the members of his family. Despite Mrs. Smith's death, Brown continued to represent her in the prosecution of the action. The matter was finally brought on for trial, and as a result thereof, Burdick, on November 4, 1933, recovered judgment against Mrs. Smith in a sum in excess of thirty thousand dollars.

Brown had become acquainted with Mrs. Smith about November, 1928, at which time she was approximately seventy years of age. Between April 1, 1929, and July 24, 1932, Brown, through blandishments, flattery, and false representations, induced Mrs. Smith to appoint him as her agent, attorney-in-fact, and trustee, and to turn over to him all her property, amounting in value to more than five million dollars. After securing possession of Mrs. Smith's property, Brown took her into his custody and under his control. He removed her from Seattle, which was then her place of residence, to various cities in Canada, finally arriving in Montreal, where he secreted her from her relatives and from the public authorities of the United States, who had been seeking to arrest her upon a charge of evading payment of income taxes.

Mrs. Smith died in Montreal on July 24, 1932. Brown had her remains cremated there, but throughout the remainder of his lifetime concealed the fact of her death from everyone in this country except his wife. Upon Mrs. Smith's death, he also procured and converted to his own use other property belonging to her and valued at more than five hundred thousand dollars.

Brown died on January 27, 1934, in Yakima county, Washington, which was the place of his residence. After his death, his widow, Sadie R. Brown, although

having full knowledge of Mrs. Smith's death in 1932, concealed that information until June 22, 1934.

In July, 1934, the fact of Mrs. Smith's death having then become known, and her will having been discovered, probate proceedings upon her estate were begun in King county, and, as a result, Mr. Wilmon Tucker, an attorney of Seattle, was appointed administrator with the will annexed of her estate. Notice to creditors was published, and thereupon Burdick duly and regularly filed his claim, then amounting to $32,855.94, against the estate. The claim was based both upon the prior judgment in the Portland suit and upon the services for which the judgment was granted. The claim was allowed by the administrator of the Smith estate and by the court. Claims of other creditors were likewise allowed. No assets, however, have come into the hands of the administrator Tucker, and there are no funds in his possession out of which the debts of Mrs. Smith can be paid. After Burdick's claim had been allowed, he assigned it to the appellants herein, and all subsequent proceedings have been maintained by them.

Upon the death of Reese B. Brown and after some preliminary proceedings affecting his estate, his will was admitted to probate in Yakima county, and, upon the resignation of Sadie R. Brown, his widow, who had been named executrix in the will, respondent Guaranty Trust Company was appointed administrator *de bonis non*, with the will annexed, of Brown's estate.

Within the time allowed by law, Tucker, as administrator of Mrs. Smith's estate, pending in King county, filed a claim against the estate of Reese B. Brown, in Yakima county, in the sum of $5,250,000, seeking thereby an accounting and settlement of the property, proceeds, and income which Brown had received from Mrs. Smith in her lifetime and also of all property ob-

tained by him after her death, and demanding that all of the property standing in the name of Brown or under his control at the time of his death be decreed to be the property of Mrs. Smith's estate. The theory of the administrator's claim against the Brown estate was that Brown had come into possession of Mrs. Smith's property as her agent or representative, that he had at all times since failed to account for or return it, and that the property belonged to the Smith estate and should therefore be restored.

At about the time that the administrator Tucker filed the foregoing claim, appellants, assignees of Burdick, also filed their claim in the sum of $32,855.94 against the estate of Reese B. Brown. The theory of appellants' claim was not only that Brown, acting as the agent of Mrs. Smith, had defrauded her of all her property, but also, in the alternative, that he had received it as a gift from her, without any consideration, that it had been so received by him after the indebtedness to Burdick and other creditors of Mrs. Smith had accrued, and that appellants were, therefore, entitled to have such gift and transfer set aside as a fraud upon creditors.

Both of the claims just mentioned were rejected by the representatives of Brown's estate and by the superior court of Yakima county. Separate suits were immediately brought in Yakima county by the respective claimants against the representatives of Brown's estate.

The complaint in the present action further alleges, and it is important to note, that neither in the claim filed by the administrator Tucker nor in his subsequent complaint based thereon was it alleged that any claim or debt existed against the estate of Sarah E. Smith or that there was not sufficient money or property in his hands to pay the claims against the estate and the

expenses of administration, or that the Smith estate was insolvent.

In response to the administrator's complaint, the defendants in that action, respondents in this action, filed an answer alleging that all the property or money which Reese B. Brown had received from Mrs. Smith in her lifetime was an absolute gift from her to him. In replying to that allegation, the administrator Tucker alleged that, if the property was so received as a gift, it was without consideration, and, further, that there were divers claims against the Smith estate that had not been, and for the lack of funds could not be, paid by him, and that the estate was insolvent. It will be noted that the reply raised an issue which was not included or suggested in the claim previously filed by the administrator of the Smith estate.

In the trial of the issues presented by the pleadings in that action, the court held that the administrator Tucker could not, under the claim filed by him against the Brown estate, recover on behalf of the creditors of the Smith estate, and accordingly entered a decree dismissing that action with prejudice.

In the present complaint, appellants, having included the administrator Tucker as a party defendant, made an offer to wage the action on behalf, and for the benefit, of all creditors of the Smith estate, and to surrender to the administrator of the Smith estate all property that might be decreed in this action to be the property of appellants.

This completes our statement of the case as set forth in the complaint in the present action. As already stated, the trial court sustained a demurrer to the complaint and dismissed the action. This appeal is taken to review the judgment of dismissal entered by the trial court.

The sole question for determination on the appeal is whether, upon the facts as presented by the complaint, appellants, creditors of the estate of Sarah E. Smith, are entitled to maintain this action, or whether, on the contrary, the exclusive right to maintain such action is in the administrator of the Smith estate.

The general rule is that executors and administrators alone can bring actions to recover assets belonging to a decedent's estate or to obtain damages for the conversion of the personal property of the estate. 11 R. C. L. 260, § 295. See *Buchanan v. Buchanan,* 75 N. J. Eq. 274, 71 Atl. 745, 138 Am. St. 563, 20 Ann. Cas. 91, 22 L. R. A. (N. S.) 454, and *Ryan v. Kelsey* (C. C. A. 3d), 259 Fed. 945, 7 A. L. R. 234, for discussion of the principle stated and the authorities thereon, together with annotations. The reason for this rule is that only by its observance can estates be promptly and properly settled and the rights of all creditors equally protected.

The rule as thus stated has become, in many states, even more firmly implanted by statute, the effect of which is to make the executor or administrator the statutory agent of the creditors for the purpose of maintaining the particular action for their benefit. *Beswick v. Churchill Co.,* 22 Cal. App. 404, 134 Pac. 722; *Marion County Nat. Bank v. Smith,* 205 Iowa 203, 217 N. W. 857; *Caswell v. Caswell,* 28 Me. 232; *Putney v. Fletcher,* 148 Mass. 247, 19 N. E. 370; *Fourth Nat. Bank of Boston v. Mead,* 214 Mass. 549, 102 N. E. 69; *Millen v. Kavanaugh,* 268 Mass. 73, 167 N. E. 291; *In re Smith's Estate,* 60 Mont. 276, 199 Pac. 696; *Baker v. Carter,* 127 N. C. 92, 37 S. E. 81; *Fehringer v. Commercial Nat. Bank,* 23 Utah 393, 64 Pac. 1108; *Wasatch Livestock Loan Co. v. Nielson,* 90 Utah 307, 56 P. (2d) 613; *Beswick v. Dorris,* 174 Fed. 502; 2 Bancroft Probate Practice, §§ 474-476.

The statutes of this state touching the particular subject are comparable and similar, in language, purpose and effect, to those involved in the cases just cited. Rem. Rev. Stat., § 1464 [P. C. § 9969], confers upon a duly qualified executor or administrator the right to the immediate possession of all real and personal estate of the deceased. Rem. Rev. Stat., § 1517, [P. C. § 9885], casts upon the personal representative the duty to settle the estate in his hands as rapidly as possible, to collect all debts due the estate, and to pay all debts owing by the estate in the manner provided. To that end, the statute further authorizes the personal representative in his own name to prosecute such actions as pertain to the management and settlement of the estate and to institute suit to collect any debts due the estate or to recover any property, real or personal. Rem. Rev. Stat., § 1518 [P. C. § 9886], authorizes the personal representative to maintain actions for the recovery or possession of any property. Rem. Rev. Stat., § 1523 [P. C. § 9891], which relates more directly to the point, provides:

"When there shall be a deficiency of assets in the hands of an executor or administrator, and when the deceased shall in his lifetime have conveyed any real estate, or any rights, or interests therein, with intent to defraud his creditors or to avoid any right, duty or debt of any person, or shall have so conveyed such *estate*, which deeds or conveyances by law are void as against creditors the executor or administrator, may, *and it shall be his duty to, commence and prosecute to final judgment any proper action for the recovery of the same,* and may recover for the benefit of the creditors all such real estate so fraudulently conveyed, and may also, for the benefit of the creditors, sue and recover all goods, chattels, rights and credits which may have been so fraudulently conveyed by the deceased in his lifetime, whatever may have been the matter of such fraudulent conveyance." (Italics ours.)

Under our interpretation of this statute, it becomes the positive duty of the executor or administrator, whenever the assets of an estate are insufficient to pay the creditors, to commence and prosecute all actions for the recovery of property of the estate, whether real or personal, fraudulently conveyed by the deceased, and in the exercise of that duty he is entitled to a recovery, for the benefit of creditors, of all such property fraudulently conveyed. In line with the decisions from other states, cited above, we interpret this statute to mean that, as a general rule of procedure, the personal representative of the deceased has, primarily, the exclusive right to maintain such action, that is to say, he has the prior right, which he may assert to the exclusion of the rights of others.

There are, however, certain well-defined and specifically recognized instances which, by reason of their peculiar factual situations, do not come within the provision or requirement of the rule. Among these instances the most common are (1) where there has been collusion between the personal representative and the fraudulent transferee; (2) where the personal representative unreasonably refuses to bring the action; (3) where the transferee is himself the personal representative; (4) where there is no necessity for administration; and (5) where the estate of the decedent grantor has been fully settled, and the administration closed. None of these instances, however, are, in point of fact, applicable to the present situation.

But these specific instances are not exclusive, nor does their enumeration correctly or accurately express or define the limits of the general rule. They are, after all, but illustrations of a well-settled principle to which the rule itself conforms. That principle is one of chancery jurisdiction, which, expressed in

the form of a precept, is probably the most important of the equitable maxims, namely, that equity will not suffer a wrong (or, as sometimes stated, a right) to be without a remedy.

Where there is a substantive legal right, that is, a right which comes within the scope of juridical action, as distinguished from a mere moral right, and the procedure prescribed by statute for the enforcement of such right is inadequate or the ordinary and usual legal remedies are unavailing, it is the province of equity to afford proper relief, unless the statutory remedy is exclusive. Pomeroy, Equity Jurisprudence (4th ed.), 790-792, §§ 423, 424; Story's Equity Jurisprudence (14th ed.), §§ 96, 97; Snell's Principles of Equity (18th ed.), 14; 21 C. J. 198, § 188.

■ The statutory remedy for the recovery of property fraudulently conveyed or transferred by one who has since died is not exclusive in the sense that the statute has created a right which did not exist before, nor does the statute in terms negative the right of the creditor, under any and all circumstances, to take appropriate action. The statute is, as already indicated, exclusive only in the sense that it is a prior right which the personal representative may insist upon. If he does not exercise it, then the creditors may proceed as though the statute did not exist.

Mere novelty of incident or mere absence of precedent furnishes no sound reason for denying relief when the situation equitably demands it and no principle of law prohibits it. When special circumstances create a situation capable of being redressed within the scope of judicial action, a court of equity will devise a proper remedy, and will not hesitate to do so merely because no relief is provided by rule or precedent.

"But there may be cases in which the statutory proceedings would not afford adequate remedy—'exceptional cases in which it appears that equity must be invoked because legal remedies are unavailing.' (*Herrlich v. Kauffmann, supra* [99 Cal. 271, 33 Pac. 857].) In such case the code provisions may be departed from, for it is the province of equity to relieve where legal remedies fail." *Emmons v. Barton*, 109 Cal. 662, 668, 42 Pac. 303. Cf. *Potts v. Mehrmann*, 50 Cal. App. 941, 195 Pac. 941.

For a further exposition of the maxim which we have just been discussing, see Bispham, Principles of Equity (10th ed.), p. 56 *et seq.*; Lawrence on Equity Jurisprudence, §§ 38, 39, p. 63 *et seq.*, § 52, p. 79 *et seq.*; McClintock on Equity, 41, § 27.

The situation presented by the allegations of the complaint in this action brings this case within this equitable principle. If the facts be as alleged, appellants, as creditors of the estate of Sarah E. Smith, had the right to demand and compel a repudiation by the administrator Tucker of the conveyance and transfer by Mrs. Smith of her property to Brown, made without consideration and after the indebtedness to appellants' assignor had accrued. By statute, the preferential, and for the time being the exclusive, right to maintain an action for the purpose was in the administrator of Mrs. Smith's estate. The administrator assumed to assert that right by filing a claim against the administrator of the Brown estate for the restoration of all the property formerly belonging to Mrs. Smith. However, according to the trial court's disposition of the present case, the claim of the administrator was abortive because certain indispensable allegations had not been included therein, and the administrator's action, based on the claim filed by him, was accordingly dismissed with prejudice.

Appellants are therefore in exactly the same situa-

tion as they would have been if the administrator had refused to act at all with reference to their claim. Their rights against the Brown estate have never been adjudicated upon the merits, and they have been prevented from securing that to which they are entitled merely because the administrator, over whose acts they had absolutely no control, failed to file a proper claim on their behalf. Having a well-founded right, the creditors will be left without redress unless a court of equity provides it.

Since appellants have independently filed their claim, conformable to the statute, and have offered to permit the remaining creditors of the Smith estate to share proportionately in any recovery, and have otherwise offered to do equity in the premises in all respects, and since their rights cannot now be fully protected by any action that the administrator may take, they are entitled to maintain an equitable action, for the benefit of all creditors, to set aside the conveyance and transfer made under the conditions already described.

Respondents, in support of the judgment of the trial court, make the contention that, under the doctrine of *res adjudicata*, appellants are barred from maintaining the action. This contention is based upon the assertion that all matters involved in the present issues were litigated in the suit brought by the administrator against these respondents. Two answers may be made to that contention. In the first place, this case was presented to the trial court simply upon the complaint and the demurrer thereto, and the complaint does not upon its face show that the instant matters have been litigated. *Res adjudicata* is an affirmative defense and must be established by proper evidence.

In the next place, to sustain respondents' con-

tention would lead to an anomalous result. The trial court dismissed the administrator's action because his claim did not show that he was suing for the benefit of creditors. To say, now, that the issues were litigated in that action would be equivalent to saying that the administrator did bring and maintain an action for the benefit of creditors, which is the very thing that the court said had not been done. We cannot accept respondents' theory.

The judgment is reversed, and the cause is remanded with instructions to proceed in accordance with the views herein expressed.

BEALS, GERAGHTY, JEFFERS, SIMPSON, and ROBINSON, JJ., concur.

MAIN, J. (dissenting)—In the case of *Tucker v. Brown,* just decided, *ante* p. 320, 92 P. (2d) 221, it was held that neither the administrator *de bonis non* with the will annexed of the estate of Reese B. Brown, deceased, nor Sadie R. Brown, had any right to the possession or control of any part of the property of Sarah E. Smith, but that the administrator of the latter's estate had the right to such possession and control. This being true, it does not appear to me that there is anything remaining in this case for the court to pass upon, and, as I view it, the case should be dismissed.

BLAKE, C. J., and MILLARD, J., concur with MAIN, J.