IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of: | ) | No. 83097-0-I |
| | ) | |
| ANN R. RULE, | ) | DIVISION ONE |
| | ) | |
| Deceased. | ) | UNPUBLISHED OPINION |
| | ) | |
| DONNA ANDERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE SHERLES, and BARBARA THOMPSON, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| LESLIE SCOTT RULE, MACHELL SHERLES, and ROBERT W. BAIRD & CO., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

HAZELRIGG, J. — More than four years after the death of her longtime friend, Ann Rule, Donna Anders filed this proceeding against Rule's attorney in fact. The trial court dismissed Anders's claims, concluding that she lacked standing to maintain the action because, even if the attorney in fact acted outside her authority, any duties breached were owed only to Rule. For that reason, the court ruled that Anders lacks authority to pursue claims on Rule's behalf as that authorization only rests with Rule's personal representative. We affirm.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

Ann Rule was a successful author and the mother of four children. Donna Anders was Rule's friend for many years and professionally, her "right hand woman." Rule executed a will in 1996. Among other things, that will designated Anders as the executrix, bequeathed $50,000 to Anders, $10,000 to Rule's "foster son," Bruce Sherles, and distributed the remainder of Rule's estate equally to her four biological children. In 1997, Rule designated Anders and each of her four biological children as 20 percent beneficiaries of an Individual Retirement Account (IRA) held by investment banking firm, Smith Barney.

Approximately 18 years later, in February 2015, Rule executed a durable power of attorney (DPOA) appointing Barbara Thompson as her attorney in fact. The DPOA became effective on April 9, 2015, when Rule's family physician provided an opinion that Rule was no longer capable of managing her own finances. In May 2015, Rule executed new estate planning documents, including a new will with the assistance of her attorney.[1] Rule's 2015 will does not mention Anders and provides for Rule's estate to pass, in equal shares, to her four biological children and Sherles.[2]

On June 10, 2015, because Rule's financial planner was then working for Robert W. Baird & Co. (Baird), Thompson closed Rule's Smith Barney IRA, transferred the funds to Baird, and opened a new IRA at Baird. Consistent with

---

[1] Rule's physician rendered an opinion on May 21, 2015 that Rule was "fully competent" to execute estate planning documents.

[2] Anders's briefing repeatedly refers to Rule's 1996 will, implying that she remains a beneficiary of Rule's estate, otherwise failing to mention the documents Rule executed in 2015 which removed her as a beneficiary. The 2015 will explicitly revoked and replaced any previous estate planning documents, including the 1996 will, and was admitted into probate in King County Superior Court.

Rule's 2015 estate planning documents, Thompson executed a beneficiary form for the Baird account that listed Rule's four biological children and Sherles as beneficiaries, each receiving a 20 percent share of the account. Thompson signed the form on Rule's behalf on July 24, 2015. Meanwhile, Rule was admitted to the hospital on July 18, 2015 and died there soon after on July 26. The assets from Rule's Baird IRA were distributed to the designated beneficiaries in October 2015.

More than four years later, in September 2019, after she learned that Thompson, and not Rule, signed the Baird beneficiary designation form, Anders filed a petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, against Thompson and Sherles.[3] Anders claimed that she was harmed because the DPOA did not authorize Thompson to "change [Rule's] beneficiary designation" and she acted outside of her authority. Anders sought a court order confirming that the funds from the Baird IRA were wrongfully distributed to Sherles and therefore, held in "constructive trust" for her.[4]

Thompson and Sherles filed a joint motion to dismiss Anders's petition under CR 12(b)(6), arguing that Anders lacked standing because (1) Thompson owed no duty to Anders and (2) only the personal representative has the right to sue the attorney in fact for breach of duties to the decedent. Anders argued in

---

[3] Anders's petition also raised claims against Baird. The trial court entered a separate order dismissing those claims and Anders does not challenge that ruling.

[4] Anders asserts, without citation to authority, that she is unable to seek removal of the personal representative because she is a non-beneficiary of the estate. She also claims she is unable pursue the matter through the successor personal representative, Sherles's spouse, whose personal interests are adverse to hers. The issue of whether Anders could seek removal of the personal representative is not before us. See RCW 11.68.070 (procedure when personal representative is subject to removal); RCW 11.96A.030(5) (defining party for purposes of seeking removal as including those with a legal or equitable interest in the subject and requiring liberal construction). Regardless, Anders does not refute the assertion that she has not made a creditor's claim against the estate or requested investigation of the 2015 beneficiary designations.

response that her claims did not depend on the existence of a duty owed to her by Thompson. Anders claimed that Thompson was liable for damages simply because she had no authority to change Rule's beneficiary designations under the DPOA and because Anders was Rule's intended beneficiary, Anders was harmed. All parties sought attorney fees under TEDRA and/or probate law, Title 11 RCW.

After considering the parties' briefing and oral argument, the trial court granted the motion to dismiss, reserving the issue of attorney fees for a future hearing. The trial court later denied Anders's motion to reconsider the order of dismissal. Both Thompson and Sherles filed motions for attorney fees. The trial court granted Sherles's motion in part and denied Thompson's motion without prejudice. Sherles requested fees and costs in excess of $74,000 and submitted a declaration of counsel and detailed billing records in support of the request. The court determined that an award of fees and costs was "just, reasonable and equitable," but limited the amount to 12 percent of $350,000, the "base amount of the disputed IRA that was withheld from his use because of this Anders-led litigation."

Anders appeals.

ANALYSIS

Anders claims the trial court improperly dismissed her petition because she has standing to maintain an action based on Thompson's conduct as Rule's attorney in fact. We review de novo the trial court's ruling to dismiss under CR 12(b)(6). Wash. Trucking Ass'ns v. Emp't Sec. Dep't, 188 Wn.2d 198, 207, 393 P.3d 761 (2017). Dismissal is appropriate where it appears beyond doubt that a

plaintiff will be unable to prove any set of facts that would justify recovery. Id. We assume the truth of the allegations in the plaintiff's complaint and may consider hypothetical facts not included in the record. Id.

I.      Equitable Claim for Constructive Trust

Anders contends she has standing to bring a claim for a constructive trust based on an equitable theory of ownership.

But a constructive trust is a remedy, not a substantive claim. See In re Gilbert Miller Testamentary Credit Shelter Tr. & Estate of Miller, 13 Wn. App. 2d 99, 107, 462 P.3d 878 (2020) (applicable statute of limitations for claim for constructive trust is that which applies to the "underlying substantive claim."). This court has held that "[a] constructive trust is an equitable remedy" whose "primary purpose . . . is to prevent unjust enrichment." Consulting Overseas Mgmt., Ltd. v. Shtikel, 105 Wn. App. 80, 86–87, 18 P.3d 1144 (2001); see City of Lakewood v. Pierce County, 144 Wn.2d 118, 126, 30 P.3d 446 (2001) (equitable remedy may be granted when person holding title to property has been unjustly enriched). Our courts may impose a constructive trust as an equitable remedy to restore property that another has gained through means such as fraud, misrepresentation, or overreaching. Consulting Overseas Mgmt., 105 Wn. App. at 86–87. A court may only impose the remedy upon clear, cogent and convincing evidence of the basis for impressing the trust. City of Lakewood, 144 Wn.2d at 126. No authority, including that cited by Anders, supports the position a constructive trust is a substantive cause of action, rather than an equitable remedy. See e.g. Glepco, LLC v. Reinstra, 175 Wn. App. 545, 563, 307 P.3d 744 (2013) (allowing

reformation of a deed as an equitable remedy due to a scrivener's error where party seeking reformation was not a party to the deed of trust that contained the initial omission from the legal description).

To the extent that Anders suggests her claim against Sherles is one of "unjust enrichment" or fraud, her petition does not allege facts to support such claims. As Division Two of this court recently explained, consistent with the "contractual" underpinnings of unjust enrichment, the claim requires not only that the defendant received a benefit, but also that the benefit was conferred by the plaintiff. Lavington v. Hillier, __ Wn. App. 2d __, 510 P.3d 373, 379 (2022) (where it was undisputed that plaintiff did not confer the benefit on the defendants, plaintiffs could not establish the first element of unjust enrichment as a matter of law). Anders contends that Sherles "wrongfully benefitted" by receiving proceeds from Rule's IRA, but according to Anders, it was Thompson who conferred the benefit. Anders alleged no facts from which a trier of fact could find the existence of an implied contract between Sherles and Anders.

As to fraud, Anders's petition alleged that just before Rule died, Sherles told her that Rule had removed her as a beneficiary of the IRA, and that representation "induced her to take no action to protect her interests until March 2019." But among other elements that must be established by clear, cogent and convincing evidence, fraud requires proof of the speaker's knowledge of the "falsity" of the representation, intent of the speaker that the representation should be acted upon by the plaintiff, and the plaintiff's right to rely on the representation. Stiley v. Block, 130 Wn.2d 486, 505, 925 P.2d 194 (1996). Complaints that allege fraud must state

6

the circumstances constituting fraud with "particularity." CR 9(b). Anders's petition states no facts upon which a trier of fact could conclude that Sherles knew that Thompson signed the beneficiary designation form, that he intended to induce Anders to refrain from investigating the matter, or that she had a right to rely on his representation.

Because a constructive trust is an equitable remedy and Anders's petition does not allege sufficient facts to establish a substantive claim that could support the remedy, dismissal was proper.

II. Standing

A. Anders Lacks Standing to Sue for Breach of Fiduciary Duty

In briefing, Anders "does not assert any legal or fiduciary relationship between herself and [Thompson]." Nevertheless, here and below, Anders claims she is entitled to maintain an action against Thompson for breach of Thompson's fiduciary duties owed to Rule.

RCW 11.48.010 provides that "[t]he personal representative shall be authorized . . . to maintain and prosecute . . . actions [that] pertain to the management and settlement of the estate," as well as to sue for debts due to the estate, to recover property, and for trespass. And RCW 11.48.090 provides that "[a]ctions for the recovery of any property or for the possession thereof, and all actions founded upon contracts, may be maintained by and against personal representatives in all cases in which the same might have been maintained by and against their respective testators or intestates."

7

Acknowledging the personal representative's statutory authority, Anders claims that this authority is not exclusive. But Washington courts have long held to the contrary. In 1939, our Supreme Court held in <u>Rummens v. Guaranty Tr. Co.</u>, 199 Wash. 337, 344, 92 P.2d 228 (1939), "The general rule is that executors and administrators alone can bring actions to recover assets belonging to a decedent's estate or to obtain damages for the conversion of the personal property of the estate."[5] Citing the predecessor to RCW 11.48.010, the court determined that the personal representative not only had a "positive duty" to "commence and prosecute all actions for the recovery of property of the estate," but the personal representative also had "the <u>exclusive</u> right to maintain such action." <u>Id.</u> at 345–46 (emphasis added).

Our decision in <u>Young v. Boatman (Boatman I)</u>, No. 72643-9-I (Wash. Ct. App. Feb. 8, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/726439.pdf, is consistent with <u>Rummens</u>. It also makes clear that even if Anders were a beneficiary of the estate, she has no standing to sue Thompson based on a theory of breach of Thompson's duties to Rule as Rule's attorney in fact.

The critical facts of <u>Boatman</u> are analogous to those here. Bojilina Boatman appointed her son, Brian, as attorney in fact. <u>Id.</u> at 2. After Bojilina died, Brian's siblings, the other beneficiaries of their mother's estate, filed a TEDRA petition alleging that Brian converted assets of the estate in breach of the fiduciary duties he owed to his mother as her attorney in fact. <u>Id.</u> at 3–4. Brian filed a motion to

---

[5] Under RCW 11.02.005(7), "'Executor' means a personal representative of the estate of a decedent appointed by will and the term may be used in lieu of 'personal representative' wherever required by context."

dismiss arguing that, while she was alive, only Bojilina had the right to sue him for breach of his fiduciary duties and, after her death, only the personal representative of the estate had a statutory right to sue on that basis. Id. at 5–6. The trial court dismissed the petition. Id. at 7. We affirmed, concluding that under the "plain and unambiguous language of Title 11 RCW, only the personal representative has authority to bring claims for breach of fiduciary duty and conversion on behalf of the Estate against Brian while acting as the attorney-in-fact." Id. at 12. The beneficiaries, therefore, lacked "standing" to pursue legal action against Brian for breaching fiduciary duties owed to their mother. Id.

Anders unpersuasively argues that Boatman I applies only when a beneficiary sues on behalf of the decedent's estate, but not when the action is brought solely on the beneficiary's behalf. She claims that, in the latter case, the lawsuit is not an improper attempt to "co-opt the duties of the personal representative." But Anders's own statements establish that she is doing exactly that by attempting to give effect through litigation to "the decedent's intent." Anders's petition is premised on her claim that she is Rule's "intended beneficiary of 20 [percent] of her IRA" held by Baird. It is the personal representative, who "stands in a fiduciary relationship to those beneficially interested in the estate" and is empowered to pursue an action which purports to carry out the decedent's intent. In re Estate of Boatman, 17 Wn. App. 2d 418, 427, 488 P.3d 845 (2021).

B.     Anders Lacks Standing Under TEDRA

Irrespective of Rummens and Boatman I, Anders claims that TEDRA provides standing in these circumstances. She argues the trial court ignored a

provision of TEDRA that governs here, RCW 11.96A.080(1), which declares that "any party may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter." We rejected this precise argument in Boatman I. While RCW 11.96A.080 provides broad authorization for the use of TEDRA procedures to resolve disputes regarding trusts and estates, it does not contradict or supersede RCW 11.48.010, which grants specific and exclusive authority to the personal representative to sue on the decedent's behalf. Boatman I, No. 72643-9-I, slip op. at 9–12. TEDRA itself explicitly provides that its provisions "supplement" but do not "supersede" "otherwise applicable provisions and procedures under this title." RCW 11.96A.080(2).

Contrary to Anders's claim, standing to participate in a TEDRA proceeding does not equate to standing to bring an action to assert claims on behalf of the decedent. For instance, in In re Estate of Becker, our Supreme Court held that an omitted spouse had standing to intervene in a will contest brought under TEDRA where she "would have a significant interest in the estate if the will were declared invalid." 177 Wn.2d 242, 247, 298 P.3d 720 (2013). Standing to participate in a will contest is not the issue here.

Anders relies heavily on a recent unpublished case from Division Three of this court, In re Thiede Trust, No. 36940-4-III (Wash. Ct. App. May 25, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/369404_unp.pdf, which involved improper payments from trust assets to the trustee and his attorney after the trustee had been replaced. On appeal, the court held that a party with standing to bring or participate in a TEDRA action could also seek contempt against a party

10

that violated a prior court order. Division Three also expressly recognized that TEDRA standing to participate does not confer standing for all purposes. The court observed that while "<u>some actions on the part of an estate may only be taken by the personal representative</u>, beneficiaries have a sufficient interest to participate in a TEDRA proceeding when it could affect their pecuniary interest in the estate's devolution." <u>Thiede</u>, No. 36940-4-III slip. op. at 21 (emphasis added). The trial court did not err in determining that RCW 11.48.010 applies here and that Anders lacks standing under that provision.

      C.     Anders Lacks Third Party Standing to Assert Claims for Rule

Alternatively, Anders claims she has third-party standing to assert claims on Rule's behalf. But we need not address the elements of third-party standing. The doctrine applies only in limited circumstances to allow a person to vindicate the constitutional rights of third parties. <u>See</u> <u>Singleton v. Wulff</u>, 428 U.S. 106, 114, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) (first amendment rights); <u>State v. Burch</u>, 65 Wn. App. 828, 837, 830 P.2d 357 (1992) (equal protection claims); <u>Ludwig v. Dep't of Ret. Sys.</u>, 131 Wn. App. 379, 383–84, 127 P.3d 781 (2006) (due process). Anders asserts no constitutional claims on Rule's behalf.

III.    Award of Attorney Fees in the Trial Court

Finally, Anders claims the trial court erred in awarding fees to Sherles and, in doing so, also erred in relying on the "lost use value" to determine the amount of the award. <u>See</u> <u>Hansen v. Rothaus</u>, 107 Wn.2d 468, 473, 730 P.2d 662 (1986) (successful claimant should compensated, generally, through an award of

prejudgment interest for the lost "use value" of the money owed). Under RCW 11.96A.150, a court has "discretion to award fees and other costs to any party in an estate dispute proceeding governed by Title 11 RCW." In re Estate of Mower, 193 Wn. App. 706, 727, 374 P.3d 180 (2016). RCW 11.96.150(1) provides:

> Either the superior court or any court on an appeal, may in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

(Emphasis added.)

We review an award of fees and costs under this statute for abuse of discretion. Mower, 193 Wn. App. at 727. A court abuses its discretion if it exercises that discretion in a manner that is manifestly unreasonable, on untenable grounds, or for untenable reasons. In re Estate of Lowe, 191 Wn. App. 216, 239, 361 P.3d 789 (2015).

As a preliminary matter, while Anders assigns error to the general propriety of the fee award to Sherles, her argument in briefing focuses almost exclusively on her assignment of error as to the method of calculation. Accordingly, we focus our analysis on that aspect of her challenge as well. The trial court reviewed the evidence Sherles provided supporting his request and exercised independent judgment in determining the amount of the fee award. The court awarded Sherles

approximately $32,000 less than the amount he incurred and requested because some of the fees were not directly attributable to Anders and/or were attributable to actions of the estate. The court also determined that the issues raised were not sufficiently unique and novel to warrant the full amount of fees requested.

The court cited <u>Hansen</u> in support of its decision to limit fees and costs to 12 percent of the disputed IRA funds. Without citation to the record, Anders claims that Sherles "continued to have full use of the funds" he received from Rule's IRA during the pendency of this litigation and therefore the "lost use" value analysis is inapplicable. But it appears that the court merely analogized to <u>Hansen</u>, and did not actually apply the rule of that case by imposing prejudgment interest.[6] Further, Anders does not address, or even mention, any of the trial court's other findings that explained its rationale for determining that an award of fees and costs of $42,000 is "just, reasonable and equitable." Under these circumstances, we cannot say that the court abused its discretion in awarding fees, or in its manner of calculating the amount of the fee award.

IV.    Attorney Fees on Appeal

Anders and both Respondents, Sherles and Thompson, request attorney fees on appeal under RCW 11.96A.150 and RAP 18.1. RAP 18.1 allows us to award reasonable attorney fees or expenses "[i]f applicable law grants to a party the right to recover" such attorney fees or expenses. And under RCW 11.96A.150(1), quoted above, we may exercise discretion to award reasonable attorney fees, in consideration of any factors that we deem relevant and

---

[6] The court ruled that the attorney fee award will bear post-judgment interest.

appropriate. Sherles and Thompson have prevailed on appeal. Considering the merits of the appeal and other equitable factors, we exercise our discretion to award fees to both Respondents, against Anders, in an amount to be determined by a commissioner of this court, upon compliance with RAP 18.1.

Because Anders lacked standing to pursue claims on Rule's behalf, premised on a breach of fiduciary duties of the attorney in fact, we affirm the trial court's order dismissing Anders's petition. And because she fails to demonstrate that the trial court abused its discretion in determining the amount of fees awarded to Sherles, we affirm that order as well.

WE CONCUR:

_____     _____
Coburn, J.              Smith, A.C.J.

14